No. 2620

EX PARTE LIOTARD

September 4, 1923.                      217 Pac. 960.

1. CRIMINAL LAW—PROOF OF CRIME AND SUFFICIENT CAUSE TO BELIEVE ACCUSED GUILTY THEREOF WARRANTS HOLDING HIM IN CUSTODY.

In order to warrant holding accused to answer for the crime charged, it is not necessary, under Rev. Laws, 6986, for the court to determine that accused is guilty or the sufficiency of the evidence to warrant a finding by the jury of guilty beyond a reasonable doubt, but it need only appear that the crime was committed, and that there is sufficient cause to believe accused was guilty thereof.

2. HOMICIDE—OWNER PERMITTING ANOTHER TO OPERATE AUTOMOBILE WHILE INTOXICATED, RESULTING IN DEATH OF PEDESTRIAN, HELD GUILTY OF MANSLAUGHTER.

In a prosecution for manslaughter for causing the death of a pedestrian resulting from driving an automobile while intoxicated, proof that the machine owned by accused was being operated by an intoxicated person while accused, who had control of the automobile, was sitting therein, was sufficient to charge accused with knowledge of the operator's condition, and accused was therefore guilty under Stats. 1923, p. 12, sec. 3, providing that a person who, while intoxicated, causes death in the operation of any vehicle, is guilty of a felony.

3. HOMICIDE — NOT NECESSARY TO PROVE CRIMINAL INTENT OF ACCESSORY.

Under Rev. Laws, 6274, providing that a criminal intent is not required for conviction as an accessory, the owner of an automobile who permits an intoxicated person to operate his automobile may be convicted of manslaughter, without proof of criminal intent.

ORIGINAL PROCEEDING. Application for writ of habeas corpus by Leon Liotard. **Petition dismissed, and petitioner remanded.**

*Campbell & Robins,* for Petitioner.

*M. A. Diskin,* Attorney-General, and *Thos. E. Powell,* Deputy Attorney-General, for Respondent.

By the Court, COLEMAN, J.:

This is an original proceeding in habeas corpus. The petitioner, together with one Sim Krites, was charged in the justice's court with manslaughter. He was held to answer to the district court, and, failing to give bond, was committed to the custody of the sheriff, who holds him pursuant thereto. He now seeks to be discharged upon the ground that the evidence fails to show probable cause as a ground for his being held.

The complaint upon which the proceedings were had before the justice of the peace charges that the two defendants, while under the influence of intoxicating liquor, did unlawfully and feloniously drive and operate a certain automobile upon a street in the city of Winnemucca on a given day, and by reason of such intoxication drove and operated such automobile in such a manner as to strike one Eula C. Halloway, thereby inflicting upon her great bodily injury, resulting in her death. The prosecution was initiated pursuant to chapter 13, page 12, Statutes of 1923, section 3 of which reads:

"Any person or persons, while intoxicated or under the influence of intoxicating liquor, who drives or operates a vehicle of any kind, and who, by reason of such intoxication or condition hereinbefore stated, does any act or neglects any duty now or hereafter imposed by

law, which act or neglect of duty causes the death of, or bodily injury to, any person, shall be punished as for a felony."

The facts are these: On May 5, 1923, the petitioner had possession of the car in question under a contract of purchase. On that evening he drove the car to the Nixon Opera House, where a dance was in progress, taking Krites with him. During the entire evening Krites was very intoxicated, and though he did not undertake to dance or create any disturbance, and remained during the entire evening in the lobby of the opera house, he was ordered from the place. However, he stayed until the dancing ceased. While the people were leaving, Krites and the petitioner went out to the automobile, which was standing in front of the opera house. Krites got into the car, behind the steering-wheel, and started the engine. At this point petitioner was seen by those leaving the opera house to step upon the running-board of the car. About a minute thereafter the car was thrown into reverse gear, and the car backed up with great force across the sidewalk, striking Miss Halloway and crushing her against a brick wall, from which injury she died. Immediately after the injury was inflicted, two men were seen sitting in the car. Krites admitted to the sheriff on the night of the incident that he was at the wheel when the injury occurred.

1. Counsel for petitioner makes the point that the evidence does not show that the petitioner gave Krites instructions to operate the car, or that he was in any way blamable for the injury inflicted upon the deceased, and hence must be discharged. In passing upon the contention made, it is unnecessary that we determine the question of petitioner's guilt, or the sufficiency of the evidence to warrant a jury in finding the petitioner guilty beyond a reasonable doubt. It need only appear that there is sufficient competent evidence to establish the commission of a crime and sufficient cause to believe the defendant guilty thereof. Rev. Laws, 6986; Ex Parte Molino, 39 Nev. 360, 157 Pac. 1012.

2. While it does not appear that petitioner gave Krites intructions to operate the car, it is an undisputed fact that the petitioner was present while Krites was at the wheel and while the engine was in action. Krites admits that he was at the wheel at the time of the tragedy. He was in control of the car by consent of the petitioner. Petitioner is chargeable with knowledge of Krites's condition. No one would contend that the owner of a car would not be liable for injuries resulting from his operating it while intoxicated. How, then, can he escape the consequence when he sits by and permits another, who is intoxicated, to operate it? In civil actions the negligence of a chauffeur is imputed to the owner, when he is riding in the car at the time of the negligent act. Huddy on Automobiles (5th ed.) sec. 629.

The reasoning which leads to this conclusion is equally applicable in the situation here presented. The public welfare, as well as sound logic, justifies the conclusion. The owner of a dangerous instrumentality cannot jeopardize the lives of others by placing it in the hands of one under the influence of liquor with permission to use it, or allow him to use it with his knowledge and approval, without becoming both civilly and criminally liable, when a statute such as the one in question controls. One who is so careless of the rights of others as to use a dangerous instrumentality while incapacitated by drink, or who permits others to do so, as here shown, invites the consequences. He must pay the penalty. In the case of Commonwealth v. Sherman, 191 Mass. 439, 78 N. E. 98, which is almost identical to this so far as the facts are concerned, the Supreme Judicial Court of Massachusetts disposes of the case in these brief words:

"In our opinion those facts warranted the inference that the owner knew and allowed his machine to be illegally run. The case so made out is a prima-facie case only. It may be contradicted or explained. But, uncontradicted and unexplained, it does, in our opinion, warrant that inference, and so makes out a prima-facie case."

3.  It is contended that petitioner is guilty of involuntary manslaughter, if of any crime at all, but that he cannot be guilty of that as an accessory, because there was no intent on his part to cause the injury sustained by Miss Halloway.  To sustain his position, counsel calls our attention to the case of Adams v. State, 65 Ind. 565. It is not in point.  Our statute does not make intent an element of the offense charged.  Furthermore, section 6274, Rev. Laws, provides that the lacking of a criminal intent shall not be a defense in behalf of an accessory.

For the reasons given, the petition must be dismissed, and the petitioner remanded.

It is so ordered.

## ON PETITION FOR REHEARING

April 14, 1924.

*Per Curiam:*

Rehearing denied.