## Commonwealth v. Arena

*David E. Groshens*, for Commonwealth.
*Raymond Pearlstine*, for defendant.

KNIGHT, P. J., November 22, 1935.—On a clear, bright afternoon of May 11, 1935, three lads, with fishing poles, were walking along New Hope Street, a public highway, with a paved cartway, 20 feet wide, in the Borough of Norristown. The boys were proceeding on their lefthand side of the street, facing the traffic.

Harry Arena, 18 years old, was the owner of a 1928 Pontiac automobile, which he had purchased for $75. Some time before the afternoon in question, he had taken an examination for a driver's license and had been rejected by the licensing authorities, and a license refused. On the afternoon of May 11th, Arena, in violation of the law, took out his automobile, and accompanied by three other boys, drove over the streets of Norristown. Arena drove out New Hope Street, to borough line, and then turned around. At this point, he permitted Joseph Cottitta, one of his companions, a lad 17 years old, who had no operator's license, and had never applied for one, to drive the car. Cottitta took the wheel, and with Arena sitting beside him, drove south on New Hope Street, at an improper and reckless rate of speed. As they approached the spot where the three boys were walking along the road, Cottitta became confused, lost control of the car, which crossed the highway and struck the three boys, killing one Howard Steele.

Both Arena and Cottitta were arrested, given a joint hearing, and indicted by the grand jury for involuntary manslaughter. At the trial Cottitta pleaded guilty, and Arena demurred to the Commonwealth's evidence. The district attorney joined in the demurrer, and the trial judge, after argument, found Arena guilty of involun-

tary manslaughter. Then followed this motion in arrest of judgment, which was argued before the court in banc.

A demurrer to the evidence of the Commonwealth admits all the facts which the evidence tends to prove and all inferences reasonably deducible therefrom: Commonwealth v. Williams, 71 Pa. Superior Ct. 311.

From the evidence and inferences reasonably deducible therefrom, it can be said that Arena was an inexperienced and unlicensed driver; that Cottitta was an unlicensed and inexperienced driver, and that Arena knew this when he permitted him to drive the car; that Cottitta drove the car at an improper rate of speed, and that Arena knew this, and called his attention to it, but did nothing to stop him, or to slow up the automobile; that Howard Steele met his death because of the reckless manner in which the car was driven, and that the brakes on the Arena car were in bad condition, and did not comply with the provisions of the law.

Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony or naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty: Commonwealth v. McLaughlin, 293 Pa. 218.

It might be argued, with some show of reason, that the entire unlawful adventure of taking Arena's car out on the highways, and there operating it in a negligent manner, was a joint enterprise of Arena and Cottitta, joined in by both, and that each would be criminally responsible for the results. We think, however, that this conviction rests upon firmer grounds. When Arena permitted the unlicensed and inexperienced Cottitta to drive his car, he did not only an unlawful act, but a highly negligent one. More than that, when Arena, owner of the car and in control of it, sat by the side of the unlicensed Cottitta, and permitted him to operate the car with defective brakes in a negligent and reckless manner, he committed

an act which any reasonably prudent person could and should have foreseen might result in the death or injury of another. It was this negligent and reckless conduct on the part of Arena that was the direct cause of the death of Howard Steele.

The industry of counsel, and our own research, have failed to discover one case in Pennsylvania in which the facts were at all similar to those before us, but there is authority in other jurisdictions to sustain the views above expressed. In Huddy on Automobile Law, book 9-10, sec. 47, it is said:

"In general. The crime of homicide caused by the operation of a motor vehicle may be charged against the person operating it, or against one who has control of its operation. The crime is not necessarily limited in commission to one person. Two persons may be charged as principals. One having charge of an automobile may be guilty, where he directs an intoxicated person to drive it.

". . . Ordinarily the owner is not criminally liable for the conduct of the chauffeur, though the circumstances in particular cases may be such as to charge him."

In Story v. United States, 16 F. (2d) 342, the Court of Appeals of the District of Columbia, had before it a case where the owner sat alongside a driver, both being intoxicated, and the driver killed a man. Said the court:

"If the owner of a dangerous instrumentality like an automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel", citing Ex parte Liotard, 47 Nev. 169, 217 Pac. 960.

A case very similar to the case at bar came before the Supreme Court of Michigan: People v. Ingersoll, 245 Mich. 530, 535, 222 N. W. 765. In that case, Charles Ingersoll and Mildred Snellenberger were charged with the crime of negligent homicide. Charles, the owner of

the car, was sitting alongside of Mildred, who drove the car with Charles' permission, at the time of the fatal accident, in which a person was killed through negligent operation of the car. Mildred was without a license, and though she had driven another kind of a car before, yet she was inexperienced and incompetent to drive this car. It was shown that Charles had knowledge of these things. It was shown that Mildred's driving was all right on a straight road where no perilous situations arose, but was not able to handle the car when such a situation did arise. Thus Charles rode along with one arm around Mildred's shoulders, ready for an emergency, and when the emergency did arise, even his effort to avoid the accident was not sufficient. Mildred, at the trial, was acquitted, and Charles was convicted. Affirming the conviction, the Supreme Court said:

"It would be strange, indeed, to hold the girl not responsible because, in her inexperience, she lost control of the car, and defendant also not responsible because he let her drive, and, when her want of experience brought a situation inviting disaster, he tried to avert a collision and could not do so. Defendant's automobile did not come down the highway and crash into the other car without human agency. It was a reckless disregard of consequences for defendant to permit the inexperienced girl to drive at all and especially all night, and the very event that happened was one reasonably to be expected, or at least one to have been guarded against, by not affording means for its accomplishment. No court in a civil action would think of holding defendant not guilty of negligence."

The defendant argues that criminal laws should be strictly construed, and that there intervened between the unlawful and negligent acts of the defendant, in taking his car out and permitting the unlicensed and incompetent Cottitta to drive the same, and the death of Howard Steele, an independent human agency, namely, Cot-

titta, which broke the chain of causation between the unlawful and negligent acts of the defendant and the death.

As we view it, Cottitta was not an independent agency under these circumstances; he was rather the instrument and agent of Arena, the owner and master of the car, who sat alongside of him, and permitted him to operate a car with defective brakes, in a reckless manner. The assistant district attorney, Mr. Groshens, in his brief, points out that the conduct of Arena comes squarely within the definition of involuntary manslaughter, in that the death resulted from the negligent omission of Arena to perform certain legal duties which he owed to the decedent as well as to the general public, namely, the duty to see that his automobile was not run by a careless, reckless, inexperienced, and unlicensed driver, and the duty to see that his car was equipped with proper brakes. These omissions were not only derelications of legal duties, they were unlawful acts, violations of provisions of The Vehicle Code which have direct relation to the safety of the people.

The owner of a motor car, who permits an unlicensed, inexperienced, and incompetent driver to operate a car with defective brakes, and then sits beside that driver as he operates the vehicle in a reckless and improper manner, cannot escape full criminal responsibility for the natural and probable consequences of such unlawful and negligent conduct. We are of the opinion that the defendant was properly convicted.

And now, November 22, 1935, the motion in arrest of judgment is overruled, and the defendant directed to appear in room "B", on Friday, December 6, 1935, to receive the sentence of the court.