LEWIS *v.* CHITWOOD MOTOR COMPANY.

4-5047

Opinion delivered April 25, 1938.

W. A. Utley, Paul Talley and Donham & Fulk, for appellant.

A. T. Davies, Ernest Briner, and Barber & Henry, for appellees.

GRIFFIN SMITH, C. J. The question to be determined is whether the circuit court erred in instructing a verdict for the defendants at the close of plaintiff's proof.

Appellant sued the Chitwood Motor Company and Al Miller, alleging that through the negligence of Miller, an agent of Chitwood Motor Company, while Miller was acting within the scope of his employment and without fault or negligence upon the part of appellant, he was injured in an automobile wreck, to his damage in the sum of $30,000.

In response to a motion to make the complaint more definite, the plaintiff alleged that the automobile, in which he was riding with appellee Miller, was unsafe; that "the knee action and steering mechanism were defective, caus-

ing the front wheels to shimmy and make it hard to guide and steer said car and keep same properly in the road."

Separate answers were filed by the defendants.

The accident occurred the night of October 9, 1934, between 11:15 and 11:20. Appellee Chitwood Motor Company, a corporation, at that time held a Hot Springs agency for Chevrolet automobiles. The Chevrolet Company conducted a series of zone meetings and had requested its agencies to have their representatives and salesmen attend. Such a meeting was held at the Marion Hotel in Little Rock the evening of October 9, 1934, and appellant Lewis, with Harry A. Sparks, appellee Al Miller, and Mack Lewis, John R. Tate, and H. D. Gossett, all from the Chitwood Company, left Hot Springs about half past four o'clock in the afternoon.

Appellant testified that Miller, Gossett, Tate and Sparks picked him up. They proceeded to the "Black Cat," a liquor store, where Miller bought two pints of whiskey. "He kept it on the front seat until we got out where we got a bottle of Coca-Cola. This was at Van's Cabin. As a matter of convenience while taking a drink while driving we had one bottle in the front seat and one in the back. After we left Van's Cabins we all had a drink and I took one with the rest of them. We had another drink at Benton, and after that drove on to Little Rock, arriving there a little after six o'clock. We first went to the "Tom and Andrews" Cafe and had something to eat, finishing around 7:15 to 7:30, then attended the meeting at the Marion Hotel. Mr. Chitwood [of the Chitwood Motor Company] was awarded some sort of a prize. He was not present, and Al Miller received it for him. After the meeting we got our car from the Marion Garage, and started home a few minutes after ten o'clock.

"We stopped at a sandwich place just out of town between the penitentiary and railroad. It was a dance hall as well as a sandwich shop. Miller and Tate danced several times. I drank a glass of beer, or maybe two. We left there about 11:15. Gossett and Sparks were in the back seat and Miller, Tate, and I, were in the front seat, with Miller driving. I sat between Miller and Tate.

We drove out, I suppose, two-thirds of the way to the forks of the road where the accident occurred, and there was a Ford passed us and Miller said, 'I don't think I will let him get away with that.' He took out after him and in a little while the Ford turned off and Miller slowed up a little ways and then started driving a little faster again. Three of us cautioned him about driving too fast. Just before we got to the curve Gossett leaned over and said, 'Slow down—there is a bad curve down there just ahead.' Miller said he knew it, but thought he would straighten it out. Just as we reached the curve I saw he was going too fast to make the curve, and I told him to slow down. He put the brakes on and the car took a 'shimmying' spell, and I suppose he lost control of it. I could tell he thought he would go down that old gravel road. Instead of doing that he kinda angled off down and hit a tree. After I saw him hit that tree, there was very little I know about it.''

The undisputed evidence is that Mr. Chitwood of the Chitwood Motor Company asked appellant and his companions to make the trip to Little Rock. It is also in evidence that Miller was sales manager of the used car department. His duty was to look after the repairs necessary to be made on cars taken in on exchange, and according to appellant, ''he supervised or controlled the rest of the employees in anything pertaining to used cars.''

Shortly before October 9, Roy E. Ermey traded the Chitwood Company a 1934 model Chevrolet purchased from another agency. Mr. Ermey testified that the car was defective in that it would ''shimmy'' when driven at a rate of speed varying from 30 to 45 miles an hour. Appellant testified that he knew of these ''shimmying'' proclivities, and that the Ermey car was the one they had driven to Little Rock. His statement was: ''Al Miller knew about it. After Ermey traded it in, it was run through the shop, and they were told to put it up like it ought to be. Al Miller did that. The car had been run through the shop after it was taken in from Ermey, and I assumed it was all right when we started on this trip. I asked Miller—I told him when we got in the car, I said:

'I'm afraid to go in this car.' He said: 'It has been through the shop; it is fixed.' "

The principal ground for reversal urged by appellant is that during the progress of the trial, and before the plaintiff had completed his testimony, the court interrupted the proceedings and expressed an intention to direct the jury to return a verdict for the defendants. However, subsequent to this announcement, the plaintiff was permitted to put on his witnesses for the purpose of completing the record, and at the close of such testimony a verdict for the defendants was directed.

There was no testimony that the Ermey car was not repaired after its receipt by the Chitwood Motor Company. Appellant's testimony that it began to "shimmy" as the curve was reached is not sufficient to invoke the rule of *res ipsa loquitur*.

Shortly after the accident occurred Harry A. Sparks sued in the Garland circuit court, asking $45,000 to compensate damages. Chitwood Motor Company and Al Miller were defendants. The court directed verdicts in their behalf. On appeal Judge Earl Witt was sustained. *Sparks v. Chitwood Motor Company*, 192 Ark. 743, 94 S. W. 2d 359. The following is from the opinion:

"There was some conflict in the testimony, but all of the testimony shows that they were all drinking, and the preponderance of the testimony shows that they were all drunk. It is said that on the return from Little Rock to Hot Springs, just before they reached the upper Hot Springs road, some one told Miller, who was driving, that there was a sharp curve ahead, and Miller said he would straighten it out. Miller was unquestionably guilty of negligence, but according to all of the evidence, appellant was bound to know all about it. He knew that Miller was drunk and careless, and according to all of the evidence, acquiesced in it, and made no protest. *The fact is that they were all out having a gay time, and were all guilty of negligence.* (Italics supplied.)

"The appellant insists that there is substantial evidence to support appellant's contentions, and that the court, therefore, erred in directing a verdict. He insists that there was nothing to indicate to his mind that Miller

was in a condition that made it unsafe to ride with him. Sparks himself, however, testified that when they got out on the road, Miller was driving and the Ford car passed him, and Miller said that they could not do like that and get away with it. He testified that Miller took after the Ford and gained on it, kept driving fast, and that Gossett said: 'You better slow down. We have a bad curve there ahead.' Miller said: 'I'll try to straighten that out.' Sparks was bound to know the condition of Miller, and know that he was driving recklessly. He did not make any protest, but acquiesced in whatever Miller did.''

It is insisted for reversal in the instant case that appellant Lewis positively denied he was intoxicated, or that Miller was intoxicated, or that either of them was to any extent under the influence of liquor at the time of the wreck, or that liquor was the direct or contributing cause of the misadventure.

The principles of law appellant insists are applicable are that before intoxication of the driver of an automobile will preclude a recovery by a passenger who is injured while riding with an intoxicated driver, it must be established (a) that the driver was intoxicated or under the influence of liquor to such an extent as to make him a careless or incompetent driver, (b) that the passenger knew, or by the exercise of ordinary care should have known, that the driver was under the influence of liquor, but notwithstanding such knowledge rode with him, and (c) that the intoxicated condition of the driver must have caused or at least contributed to the injury.

These are correct declarations of the law; and, in view of the testimony in this case and at the former trial, and in the light of attending circumstances, bar appellant from recovery.

Appellant, having been recalled, testified: ''I was not drunk. Wasn't anybody drunk. Sparks got sick, but wasn't anybody drunk. If I had thought Miller wasn't able to drive, I would not have ridden back with him. When he raced the Ford car approaching the curve I told him to slow down. There wasn't anything whatever in the way of drinking that caused me or anybody in that car to know that Miller was not competent to drive. He didn't do

anything to indicate that he was drunk. He was not drunk. Not a drop of liquor was consumed by the party except the two pints we took with us. It was about 7:30 when we took the last whiskey, and the accident was about four hours later. There was not a drunk man in the crowd."

There was testimony by witnesses who gathered around the scene of accident that they did not smell liquor on any of the men. Charles Miller testified that he saw Lewis, Sparks and Miller (the only members of the party he knew) at the sandwich shop and dance hall on the Nineteenth street pike on the night of the accident, and that they were not intoxicated. There was other testimony of a similar nature.

On cross-examination appellant admitted that he had testified as a witness for the plaintiff in *Sparks* v. *Chitwood Motor Company,* referred to *supra.* Having answered "I don't think so" to questions propounded by counsel for appellees, certain portions of his transcribed testimony in the Sparks case were read to him, and in substance his replies were: "The first place we stopped [after leaving Hot Springs enroute to Little Rock] was Van's Cabin. We got some Coca-Cola and took a drink of liquor. Between Van's Cabin and Benton we may, or may not, have taken a drink without stopping; I wouldn't say positively about that. . . . We probably did. If you have that there in the record I suppose I did. . . . When we got to Little Rock we had some liquor left in each of those two bottles and Miller stopped inside the garage and poured what was left in one of the bottles into the other, and that is what we carried to the hotel with us."

Asked if he did not testify in the Sparks case about drinking in the hotel, he replied: "If that is in there it is true."

In the Sparks case testimony, in response to an inquiry as to how many drinks he and others took in the hotel, appellant replied: "I suppose we had two or three. We killed what was left in the bottle."

"Q. What kind of drink did you take when you would take one? A. That depends on whether you want a drink very bad.

"Q. You testified in federal court before Judge Martineau? A. I believe I did. I believe I told you that I took a pretty good size drink.

"Q. Didn't you say this: 'I usually take a pretty good drink when I take one.' A. That is what I said."

As to Miller's drinking there is this testimony by appellant:

"Q. Now, did Miller drink? A. *He drank up until the time we left the hotel. He didn't drink any after that.*" (Italics supplied.)

It is appropriate to remark that at the time appellant and his companions made their unfortunate trip from Hot Springs to Little Rock (1934), prohibition laws in Arkansas had not been repealed, and both appellant and Miller, according to appellant's testimony, were guilty of illegally transporting liquor.

It is significant that appellant, in testifying in the Sparks case, did not mention that the car "shimmied"; nor did he say anything about having been one of three members of the party who "cautioned" Miller about driving too fast. Yet, if it be conceded that appellant "cautioned" Miller, this statement, taken in connection with his explanation of their approach to the curve, does not necessarily mean that appellant told Miller he was going too fast. Certainly he does not claim to have "cautioned" Miller while they were racing the Ford until they approached the curve, and it is undisputed that they were then "doing" sixty miles an hour. According to appellant, *"just before we got to the curve"* Gossett warned Miller, and *"just as we reached the curve I saw he was going too fast . . . and told him to slow down."* (Italics supplied.) There is nothing in this testimony to indicate that *after* receiving the warning (if, in fact, it was given), Miller then had time to reduce his speed before entering the danger zone.

In affirming the action of the circuit court, it should be said that appellee, Chitwood Motor Company, did not direct Miller or any of his companions to transport liquor, or to engage in a drinking jamboree. Appellant, in one breath, undertakes to show that four hours had elapsed between the time they "killed the bottle" and the time

the accident occurred; and in the next breath he says that Miller drank until they left the hotel. They then spent approximately an hour at a grog shop near the city's western limits participating in the rollicking abandon ordinarily attending expeditions such as they had converted the trip into. If they had not stopped for beer and sandwiches, and to measure rhythmic tread on waxed floors, the probabilities are they would have been in Hot Springs by 11:15. Certainly the race with a particular Ford car would not have occurred, for the "timing" would have been different by an hour.

Having been tempted into. Bacchanalian environments, and having embraced the lure of pleasure, appellant now seeks compensation from a source wholly blameless in so far as the motor company is concerned—a compensation to which he is not entitled. It is true that Miller was negligent; but, as the opinion in the Sparks case points out, "They were all having a gay time, and they were all guilty of negligence."

Affirmed.

Mr. Justice DONHAM disqualified and not participating.