[Crim. No. 1828.   Third Dist.   Aug. 9, 1943.]

In re GERALD WHITLATCH, on Habeas Corpus.

Wallace Shepherd for Petitioner.

Robert W. Kenny, Attorney General, T. G. Negrich, Deputy Attorney General, and Charles E. Johnson, District Attorney (Siskiyou County), for Respondent.

ADAMS, P. J.—Petitioner was charged in the Justice's Court of Yreka Township, County of Siskiyou, with the crime of negligent homicide, in that he did "wilfully, unlawfully and feloniously drive a motor vehicle with reckless disregard and wilful indifference to the safety of others then and there injuring one Orville H. Sutter, who died as a proximate result of said injuries." On hearing before the justice of the peace sitting as a committing magistrate, but three witnesses were called. Walter N. Wise testified that about 7:45 in the evening of December 9, 1942, he was proceeding north on Highway 97 near a place called Deer Mountain when he was "flagged down" by Sutter whose car was standing on the west side of the highway, about half on and half off the pavement, headed south; that the highway was dry, though there was snow on the sides, and that it was light enough to see objects in the road. He at first said that the moon was shining, but on cross-examination could not recall whether this was true or not. He stopped his truck, a gasoline transport, on the opposite side of the highway, about 100 yards after he had passed Sutter's car, and stated that after he got out of his truck he could see the tail light burning on Sutter's car. He said that he went to Sutter's car, and while he and Sutter were standing in the road beside same, and he was examining the mechanism under the hood, he was struck and rendered temporarily unconscious; that he heard no car com-

ing and that he could not recall that any car had passed on the highway during the time that he was there before the accident, a period of about ten minutes. When he recovered consciousness Whitlatch was assisting him to his feet, Sutter was lying in the highway, and Sutter's car was sitting crosswise, with the end off the highway.

The second witness called was a physician who testified to the injuries sustained by Wise and Sutter, and stated that the latter died of his injuries on December 10th.

The third witness was G. B. Daley, a captain of the California Highway Patrol, who was called to the scene of the accident. He testified that he found the Sutter car standing with the front half off the pavement, and the back half on; that defendant's car was near the right-of-way fence on the east or opposite side of the highway, with the front end badly damaged. It was approximately 100 feet east of the center line of the pavement, there were skid marks on the highway from the rear of Sutter's car, and from the point where they first appeared to the point where defendant's car came to rest was a distance of 168 feet; that the Sutter car had been struck in and to the left of the center of the rear, the body of same being driven forward and the frame bent. The defendant's car had the grilling on the radiator broken and bent, its headlights broken, its fenders torn loose and the front axle bent. This witness also testified that as he was proceeding to the scene of the accident he passed a car in which Whitlatch was riding and that the latter stated to him that he had had an accident and had hit a man and thought he was killed. It was admitted that no flares or warning signals were put out by either Sutter or Wise.

The justice of the peace, after hearing the foregoing testimony, made his order holding the said defendant to answer, his bail being fixed in the sum of $2,500.

Having been committed to the custody of the sheriff, Whitlatch petitioned this court for a writ of habeas corpus, contending that his imprisonment and detention by the sheriff were unlawful, that his commitment had been made without reasonable or probable cause, and that the evidence failed to show the commission of a criminal offense. The writ having issued, the sheriff answered denying the allegations of the petition, and attaching to his answer a transcript of the proceedings in the justice's court.

Section 500 of the Vehicle Code, as amended in 1941 and in force at the time of the accident in this case, provides:

"When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle with reckless disregard of, or wilful indifference to the safety of others, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the State prison for not more than three years."

The question in this case is, then, whether the evidence adduced before the committing magistrate is sufficient to show reasonable grounds for concluding that Sutter's death was the proximate result of the driving of a vehicle by defendant "with reckless disregard of, or wilful indifference to the safety of others."

■■■ Respondent, in support of the action of the committing magistrate, says in his brief that a fair and reasonable inference to be drawn from the circumstantial evidence and the physical facts presented, is that the automobile driven by the defendant was traveling at an excessively high rate of speed when it collided with the rear end of the decedent's automobile that was stalled upon and partly obstructing the right lane of the roadway ahead of defendant's automobile; that the evidence shows that this obstruction was in plain view of a person traveling this highway at this point at least three hundred yards each way from the point of collision and that the tail light on the decedent's automobile, from the evidence adduced, was plainly visible at least three hundred feet if not more, in the direction from which the defendant was proceeding with his automobile; and that seeing this obstruction in the roadway, as it must be inferred and presumed that he saw it, he must have known that this obstruction existed in ample time to slacken his speed and bring his automobile ·under control to avoid striking the obstruction, and that it must have been apparent to him that if he struck the obstruction, he would endanger the life of anyone in or near the automobile that was partly obstructing the highway. From the foregoing it is obvious that respondent contends that it was proper to hold defendant to answer on inferences alone, to wit, an inference that defendant was traveling at an excessive rate of speed, an inference that Sutter's car was visible at least three hundred yards from the point of colli-

sion, an inference that the tail light on Sutter's car was plainly visible at least three hundred feet away, an inference that defendant saw the obstruction in ample time to avoid it, and an inference that he wilfully disregarded or was wilfully indifferent to the safety of persons who might be in or near said car. However, it was not shown that Sutter's car was in plain view of a person traveling the highway at this point at least three hundred yards each way from the point of collision. Respondent apparently relies upon the following questions and answers during the examination of Wise:

"Q. You were traveling north? A. I was going north and he was going south.

"Q. What part of the mountain was this? A. Well, just as near as I can explain, it was just about what you could say was the summit.

"Q. On the top there? A. Yes.

"Q. On the top there, is there quite a long distance there?

"A. Yes, there is. I would say a person could see 300 yards either way."

This is not evidence as to the visibility the night of the accident, and there is no other evidence from which it could be deduced that there was a visibility in either direction of three hundred yards. Wise did testify that when he got out of his truck about 100 yards from Sutter's car, he could see the tail light of same; but he was walking toward it with Sutter after he had passed the Sutter car and had been flagged down. The time was 7:45 p. m. and the date was December 9th. ▮ That it was after dark and that there was no moon are facts of which we take judicial notice. That there was little traffic appears from Wise's testimony; and that Sutter's car was partly on the highway in defendant's lane of travel, and Sutter and Wise were both beside it in the traffic lane is conceded. There was no testimony as to the rate of speed at which defendant was traveling, and that he was "traveling at an excessive rate of speed" is merely deduced from the location of his car after the collision and the condition of both cars.

As to what constitutes driving a vehicle with reckless disregard of or wilful indifference to the safety of others, within the language of section 500 of the Vehicle Code, the Supreme Court said, in *People* v. *Young*, 20 Cal.2d 832 [129 P.2d 353], that the amendment of the said section in 1941 shows that the Legislature intended that something more than ordinary

negligence is required to constitute the offense; that the language used in the amendment should be interpreted in accordance with the definitions given by the courts to similar terms, and that therefore the construction put upon like words used in cases dealing with the liability of a host for injury to his guest, under section 403 of the Vehicle Code, is applicable. It cited and quoted from *Howard* v. *Howard*, 132 Cal.App. 124, 129 [22 P.2d 279], to the effect that:

"But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result."

It also said (p. 837):

" 'The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' (Restatement, Torts, § 500.) There may have been instances in which the phrase 'reckless disregard for the safety of others' has been considered as conduct less reprehensible than that described in the above quotation, but it must be remembered that we are here interpreting a criminal statute carrying a severe penalty, and thus it is reasonable to suppose that the Legislature was concerned with conduct which was at least quasi criminal in character."

It then went on to say that speed alone or inattention to the roadway alone does not constitute wilful misconduct (citing *Stacey* v. *Hayes*, 31 Cal.App.2d 422 [88 P.2d 165]); that colliding with a car at an intersection while traveling sixty miles an hour is not wilful misconduct (citing *McCann* v. *Hoffman*, 9 Cal.2d 279 [70 P.2d 909]); and it was concluded that, where defendant was driving an automobile about twenty-five or thirty miles an hour behind a street car, and did not stop at the rear of same as it slowed down to stop, as required by section 571 of the Vehicle Code, but proceeded to pass the stopped car and struck decedent who had alighted

from the front door of the street car, the evidence was insufficient to sustain a conviction under section 500 of the Vehicle Code; that the negligence of defendant did not constitute reckless disregard of or wilful indifference to the safety of others.

In *People* v. *Montes,* 56 Cal.App.2d 30 [131 P.2d 681], where defendant drove through a stop sign at about thirty-five miles per hour and collided with another car, killing the driver thereof, and where a witness saw the cars when they were 250 or 300 feet away from him, showing that the view of the intersection was unobstructed for that distance, the court said that the evidence showed that defendant was negligent but that the circumstances under which such negligence occurred were not such that they amounted to recklessly ignoring the safety of others by intentionally doing acts with wanton and reckless disregard of their possible result; and that the circumstances were not such that they amounted to an intentional lack of regard concerning the safety of others by intentionally doing something with knowledge that serious injury was a probable result.

In *Stacey* v. *Hayes,* 31 Cal.App.2d 422 [88 P.2d 165], cited in the Young case, defendant drove his car some 21 inches over the center line of the highway while crossing a curved portion of a bridge, and collided with an oncoming car, though he had been warned by his guest passenger that he was on the wrong side of the highway. The court, holding that wilful misconduct was not shown, said at page 426:

"In order to support the conclusion of wilful misconduct the quoted finding must affirmatively show that defendant intentionally did something in the operation of his motor vehicle which he should not have done, or intentionally failed to do something he should have done, under circumstances disclosing either an express knowledge on his part or a knowledge to be implied from the facts and imputed to him under the surrounding circumstances, that injury to his guest would be a probable (not a possible) result. Though there need be no actual conscious intent to injure the guest, the act done or the omission made must be intentional."

The evidence here adduced does not affirmatively show that petitioner intentionally did something in the operation of his car which he should not have done, or intentionally failed to do something he should have done. Inferences alone are indulged in support of the finding of the commit-

ting magistrate that ''the offense of negligent homicide has been committed and that there is sufficient cause to believe'' the defendant guilty thereof. As opposed to such inferences are the presumptions that defendant took ordinary care of his own affairs, that he obeyed the law and that he is innocent of crime. (Sec. 1963, Code Civ. Proc.)

We conclude that petitioner having been committed on a criminal charge without reasonable or probable cause, he should be discharged; and it is so ordered.

Peek, J., and Thompson, J., concurred.