## STATE v. JAMES R. ANDERSON.

78 N. W. (2d) 320.

June 15, 1956—No. 36,731.

*F. Martin Senn,* for appellant.

*Miles Lord,* Attorney General, *Charles E. Houston,* Solicitor General, *John R. Murphy,* Assistant Attorney General, and *Einer C. Iversen,* County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

On October 1, 1954, at about 11:45 a. m., defendant, James R. Anderson, and decedent, Elmer O. Weik, were the sole occupants of an automobile belonging to Anderson's mother which, as it was proceeding north on Highway No. 13 in Waseca County near New Richland, left the road and smashed into a ditch. As a result Weik died October 3, 1954, and defendant sustained severe injuries.

On February 22, 1955, defendant was convicted of criminal negligence under M. S. A. 169.11, which provides that:

"Any person who by operating or driving a vehicle of any kind in a reckless or grossly negligent manner causes a human being to be killed, under circumstances not constituting murder in the first,

second, or third degree, or manslaughter in the first or second degree, is guilty of criminal negligence in the operation of a vehicle result-ing in death."

On July 6, 1955, he was sentenced to confinement in the State Penitentiary at Stillwater for a period not to exceed ten years. This is an appeal from the judgment and from an order denying his motion for a new trial.

At the time of the accident defendant was 29 years of age and resided with his wife and child in Waseca. He was employed by the Diekema Construction Company of Albert Lea. Decedent was then 47 years of age, single, and unemployed.

At 8:30 a. m. that day enroute to Albert Lea from Waseca, dece-dent, who was riding with defendant, had purchased two ⅘-quart bottles of Muscatel wine at the New Richland municipal liquor store. Later, about 9 a. m. that day, they arrived at the office of the Diekema Construction Company in Albert Lea where defendant worked. De-fendant was then driving the car which was later involved in the accident and in stopping at the plant permitted it to bump into the wall thereof. He and Weik then went into the office, where defend-ant demanded his paycheck. He appeared to have been using intoxi-cants. After some words with his employer, he received his check and at the same time was discharged from his employment. Before he left, his employer said that "if they didn't straighten up" he would "call the cops and take the keys away from them." In re-sponse thereto decedent stated that he was all right, and thereupon defendant tossed the keys to him and they left the office. Decedent then got into the driver's seat and drove the car away with defend-ant sitting to his right in the front seat.

About 10 a. m. the same morning, enroute back to Waseca, dece-dent again stopped at the municipal liquor store in New Richland with defendant, where each had a drink of whiskey. Decedent then purchased a pint of whiskey to take with him. There is no direct evidence as to which of them drove the car after leaving the liquor store, as they were not seen again until after the accident. At about 11:45 a. m. the same morning, some six or seven miles north of New

Richland, the car left the highway and ran into the ditch, throwing both defendant and decedent clear but rendering them unconscious. About 12:30 p. m. they were taken to Waseca Memorial Hospital. Decedent was removed therefrom to Rochester, where he died October 3, 1954.

There is testimony that prior to the accident defendant was under the influence of intoxicants to a greater extent than decedent. Blood tests taken of him about an hour after the accident disclosed 0.31 percent ethyl alcohol in his system—indicative of extreme intoxication. Medical testimony was presented that the presence of alcohol in the system to the extent described would produce a drunken stupor so that the person involved would not respond— would have difficulty in coordination—and walk with a staggering gait; that it would result in "confusion and muddle mindedness"; and that it would be from 15 to 20 hours before the last of the alcohol left his system.

Approximately one and one-half hours after defendant arrived at the hospital, the sheriff of Waseca County attempted to interview him, but he did not respond to the sheriff's questions. A nurse present then indicated that defendant had spoken to her before the sheriff arrived. The latter then suggested that the nurse make inquiries of defendant which might be overheard near the door. This procedure was followed, and with respect thereto, over objection that any communication between defendant and the nurse working under the supervision of defendant's physician was privileged, the sheriff testified: "She asked him if he were driving the car." "He said he was." The nurse was not called as a witness.

The following morning at about 9:30 a. m. an agent for the insurance company which carried the liability insurance on the car called upon defendant at the hospital for the purpose of obtaining a report of the accident for the company. Over defendant's objection that any statements made to him for such purposes were privileged as between attorney and client, the court received his testimony that defendant had stated to him at this interview that he had been driving the car. There is evidence that prior to this interview defendant had had four administrations of Demerol—a morphine derivative—

in dosages of 100 milligrams each and that the effect of each dosage lasts from four to six hours.

Later the same day at about 1 p. m., defendant was interviewed by a member of the Minnesota highway patrol. The latter testified that at that time he had asked defendant if he was driving the car and that defendant had responded in the affirmative.

At the close of the testimony defendant's counsel submitted written requests for instructions to the jury, which included the following:

"* * * If, at the time of the alleged admission, defendant, either because of his intoxication, * * * drugs, injuries, or a combination of these factors, was incapable of receiving just impressions of the facts respecting which he made the alleged admissions, or incapable of relating them truly, then you are entitled to consider these factors in connection with the weight which you may give to the alleged admissions."

The court gave no cautionary instructions with respect to this evidence.

Defendant's counsel likewise submitted written requests that the court instruct the jury on defendant's theory of the case that:

"* * * if you believe Anderson was so intoxicated as to have lost the use of his faculties and you find that Weik knew and appreciated this and with that knowledge gave the keys back to Anderson and permitted him to drive the car then your verdict must be not guilty because the negligence of Weik would be the sole proximate cause of the accident.

* * * * *

"After Weik took the keys and assumed the responsibility for the operation of the car at Albert Lea he owed a duty to Anderson and to the traveling public. If he failed in this duty and permitted Anderson thereafter to drive the car that failure was negligence on the part of Weik and it was the sole and proximate cause of the accident."

474

The court denied this request, but in its memorandum indicated that it felt it had adequately instructed the jury as to the law covering the defendant's theory on the issue of proximate cause. With respect thereto the court actually instructed the jury that:

"* * * It is the law that contributory negligence of the decedent, Elmer O. Weik, is not a defense in a criminal prosecution. The defendant cannot escape the consequences of his wrongful act by relying upon a supervening cause when such cause naturally resulted from his own wrongful act. Contributory negligence of the decedent may be considered only insofar as it tends to show that the defendant was not negligent or that his acts did not constitute the proximate cause of the decedent's death."

After the jury had been out approximately nine hours, it returned for additional instructions. When it had been out another eight hours it was called back, and at that time, the court asked the foreman to state how it stood on the question of acquittal or conviction without revealing which verdict was favored. The foreman replied, "Nine to three the last one." In response to the question as to whether there had been any substantial variation in the last three hours, the foreman replied that the jury had come from seven to five to nine to three.

The jury returned again after having been in session for 21 hours without agreement. The trial court then made the following suggestions:

"* * * By way of suggestion, it occurs to the Court that perhaps a first question * * * to be decided by the jurors is who drove the car. * * * if Anderson was not driving the car then, of course, he is not guilty. If you should decide * * * that Anderson * * * was driving the car at the time of this accident then a next logical question would be if he was driving * * * in a reckless or grossly negligent manner? If it wasn't * * * then, of course, he is not guilty. If, on the other hand, you should decide that he was driving and * * * that his driving was reckless or grossly negligent then it would logically seem to follow your next question would be, was

that reckless and grossly negligent driving by Anderson the proximate cause of the death of Elmer O. Weik?"

This was followed by admonitions that the court was not attempting to eliminate the other questions that might be in the case or any of the rules of law previously given to the jury. About an hour after this additional instruction, the jury agreed on its verdict of guilty.

On appeal defendant contends that:

(1) The evidence fairly establishes that the negligence of Weik was the proximate cause of his death, and intervened and superseded any negligence that might be charged to defendant in connection therewith; and that hence the court erred in failing to give instructions on this theory requested in writing by defendant's counsel;

(2) The court erred in receiving the testimony of the sheriff and of the representative of the insurance company as to like admissions in that defendant's statements with reference thereto were in the nature of privileged communications;

(3) The court erred in inquiring of the jury as to how it was divided, and in instructing it to consider the time, labor, and expense which another trial would entail;

(4) The court erred in failing to give cautionary instructions as to the weight to be accorded the testimony of the state's witnesses as to defendant's admissions that he was driving the car at the time of the fatal accident.

■ We find no error in the trial court's refusal to instruct the jury that decedent's negligence superseded that of defendant as the proximate cause of the accident resulting in decedent's death. While the evidence would support a finding that decedent, knowing defendant was intoxicated, was guilty of gross negligence in permitting him to drive the car, this would not constitute a superseding intervening cause of the accident but rather, at the most, a concurring proximate cause thereof. Obviously, it would not absolve defendant from responsibility for his own reckless or grossly negligent operation of the car in violation of § 169.11. Story v. United States, 57 App. D. C. 3, 16 F. (2d) 342, 53 A. L. R. 246; Ex parte Liotard, 47 Nev. 169, 217 P. 960, 30 A. L. R. 63; State v. Gibbs, 227 N. C. 677,

44 S. E. (2d) 201; State v. Trott, 190 N. C. 674, 130 S. E. 627, 42 A. L. R. 1114; State v. Hopkins, 147 Wash. 198, 265 P. 481, 59 A. L. R. 688; Annotation, 99 A. L. R. 771. For application of this rule in civil actions, see Tolbert v. Jackson (5 Cir.) 99 F. (2d) 513; Powell v. Langford, 58 Ariz. 281, 119 P. (2d) 230; Lewis v. Chitwood Motor Co. 196 Ark. 86, 115 S. W. (2d) 1072; McMahon v. Schindler, 38 Cal. App. (2d) 642, 102 P. (2d) 378; Krausnick v. Haegg Roofing Co. 236 Iowa 985, 20 N. W. (2d) 432, 163 A. L. R. 1413; Whitney v. Penick, 281 Ky. 474, 136 S. W. (2d) 570; Tanis v. Eding, 280 Mich. 440, 273 N. W. 761; Bock v. Sellers, 66 S. D. 450, 285 N. W. 437.

■ The evidence is sufficient to support a finding that defendant's action in driving the car in a reckless or grossly negligent manner was the proximate cause of the accident. Section 169.13 defines reckless driving as driving "in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property * * *." In State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480, we held reckless driving to mean the conscious and intentional driving that a driver knows or should know creates an unreasonable risk of harm to others, even though he have no actual intent to harm them, and in construing § 169.11 defined gross negligence as substantially higher in magnitude than a mere failure to exercise ordinary care—a heedless and palpable, though not intentional, violation of a legal duty respecting the rights of others. On a number of occasions we have held that driving a much-traveled highway while intoxicated may constitute gross negligence, creating criminal responsibility. State v. Brady, 244 Minn. 455, 70 N. W. (2d) 449; State v. Bolsinger, *supra;* State v. Kline, 168 Minn. 263, 209 N. W. 881. Under these principles and upon the evidence submitted, it is clear the jury might justifiably find that defendant's actions in driving while intoxicated constituted gross negligence resulting in the death of a person and hence, regardless of decedent's conduct, violative of § 169.11.

■ It is contended that the admissions made by defendant to the nurse and to the representative of the insurance company were in the nature of privileged communications and hence inadmissible

under § 595.02(2, 4). In Brown v. St. Paul City Ry. Co. 241 Minn. 15, 34, 62 N. W. (2d) 688, 701, 44 A. L. R. (2d) 535, 552, we stated that "whether a * * * communication is privileged is a question of fact" and that if "a party litigant claims privilege, the burden rests on him to present facts establishing the privilege * * *." Thus, here the burden rested upon defendant to establish that the statements made to the nurse were made to her in her professional capacity as an aid to the physician attending him, and only for the purpose of diagnosis or treatment. Ostrowski v. Mockridge, 242 Minn. 265, 65 N. W. (2d) 185; Brown v. St. Paul City Ry. Co. *supra.*

As to the statement made to the insurance representative, it was incumbent upon defendant to establish that it was made in confidence and for exclusive use in preparation of the defense of any suit which might be brought against him as a result of the accident. The policy involved contained a clause, commonly designated an omnibus clause, extending its coverage to any person driving the car insured with the permission of the named insured. Schultz v. Krosch, 204 Minn. 585, 284 N. W. 782; see, Gudbrandsen v. Pelto, 205 Minn. 607, 287 N. W. 116. If defendant were the driver, under the terms of the policy the representative of the insurance company would have the right to ascertain from him all facts relative to the accident. If this were made clear to defendant and he was advised that the information elicited was to be used exclusively in defense of any litigation arising out of the accident, it would seem that the statements made by defendant in response to questions then asked by the insurance representative would be privileged.

From the foregoing it would follow that any relevant evidence on the issue of privilege would be admissible. This would include evidence relative to the facts and circumstances under which the statements were made, the inducements or representations made by the party eliciting them, as well as the status of such party, and the purpose or understanding of defendant with respect thereto. All of such factors would have a proper bearing in determining whether the statements were privileged or otherwise.

Here, the record indicates that defendant failed to sustain the burden establishing that his admissions were intended to be privi-

leged. There is nothing to show that he testified as to his purpose or intent in making them or as to the representations made by the nurse or the insurance representative to induce them at the time they were made, nor is there anything to show the capacity in which the nurse and insurance representative were acting insofar as it was disclosed to defendant at such time. Under such circumstances the trial court properly overruled objections to the testimony of the witnesses relative to such statements on the grounds that the latter were privileged.

■ Defendant's next contention is that the court erred in asking the jury how it was numerically divided with respect to a verdict when it appeared to be deadlocked after 17 hours of deliberation; in urging it after 21 hours to reach a verdict; in pointing out again the principal issue to be determined; and in calling attention to the labor, expense, and time which another trial would entail. In giving these additional instructions, the court was careful to point out that it did not intend to tell the jury what to do, and that the verdict to which each ultimately agreed must be the result of each juror's own convictions rather than a mere acquiescence in the conclusions of his fellows. We do not find the procedure and additional instructions outlined differed materially from those approved by us on a number of prior occasions. State v. Doan, 225 Minn. 193, 30 N. W. (2d) 539; State v. Siebke, 216 Minn. 181, 12 N. W. (2d) 186; State v. Friend, 154 Minn. 428, 191 N. W. 926. We recognize that in some jurisdictions a contrary rule prevails (see, Annotations, 109 A. L. R. 72, 85 A. L. R. 1420, 19 A. L. R. [2d] 1257), but in view of our prior decisions to which we adhere, we must hold there was no error in the procedure followed on the instructions given at this stage of the trial.

■ With respect to defendant's admission that he was driving the car involved in the accident, made to the nurse shortly after the accident and on the following morning to the insurance company representative, we are of the opinion that the court should have cautioned the jury that the weight to be attached to such statements would be affected by the fact that they were made while defendant was under the influence of intoxicants or drugs. It is conclusive that the admis-

sion to the nurse was made while he was extremely intoxicated and suffering intensely from his injuries. Dr. O. J. Swenson, coroner and attending physician, testified that a person intoxicated to the extent then disclosed by defendant's blood tests would ordinarily be unconscious or "in a drunken stupor"—or "just out." There is nothing opposed to such evidence. The sheriff testified that when he questioned defendant at the time he was not certain if defendant was then conscious; and that defendant failed to answer his questions. It was immediately thereafter and at his suggestion that the nurse interviewed defendant and procured the admission while the sheriff listened. The nurse, who might have shed some light on defendant's mental condition at that time, was not called as a witness. After defendant had regained his mental faculties, he stated he did not recall who was driving the car at the time of the accident. Such factors make it clear that on the present record the evidence is conclusive that defendant's statement was involuntary and should not have been received.

The rule governing such situations is expressed in Aide v. Taylor, 214 Minn. 212, 217, 7 N. W. (2d) 757, 760, 145 A. L. R. 530, 534, where we stated:

"* * * If it conclusively appears that the party was incapacitated from making a rational admission, as where he was at the time in a coma, the question becomes one of admissibility, and the statement should be ruled out entirely."

Likewise, in State v. Schabert, 218 Minn. 1, 15 N. W. (2d) 585, which concerned the voluntary character of a confession, we stated that, if the evidence presented to the court outside the presence of the jury made it appear conclusive that a claimed confession was involuntary, it should be excluded by the trial court.

■ The record discloses that the admission made to the insurance representative on the following morning was made while defendant was still under the influence of intoxicants and after he had been given four administrations of Demerol, factors which undoubtedly affected his mental capacity. While it is not conclusive that this admission was involuntary, it would still seem that in justice

the court should have given the jury a cautionary instruction as to the weight to be attached to it in view of the circumstances under which it was made. In Aide v. Taylor, *supra,* we stated that the probative weight to be attached to admissions made by a party not having free use of his mental faculties was for the trier of fact. See, Bourne v. State, 116 Neb. 141, 216 N. W. 173; State v. Johnson, 211 Iowa 874, 234 N. W. 263; People v. McArron, 121 Mich. 1, 79 N. W. 944; Bruner v. People, 113 Colo. 194, 156 P. (2d) 111; Harrison v. State, 149 Fla. 365, 5 So. (2d) 703; State v. Webb, 216 Mo. 378, 115 S. W. 998, 20 L.R.A.(N.S.) 1142; Burnett v. People, 204 Ill. 208, 68 N. E. 505, 66 L. R. A. 304. It is true that whether a cautionary instruction should be given ordinarily rests in the sound discretion of the trial court, Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; State v. Jenkins, 171 Minn. 173, 213 N. W. 923, but in a situation such as that presented here, it would seem that a failure to give such an instruction constituted material error.

We are strengthened in this conclusion by the conflicting evidence as to whether defendant was the actual driver of the car at the time of the accident. The only direct evidence on this issue establishes that decedent was the last one seen driving the car and that he had the keys in his possession just before the fatal accident. Further doubt is cast on this issue by defendant's statement made after he had regained the full use of his mental faculties that he had no recollection as to whether he was driving the car or not.

With respect to the statement made by defendant to the highway patrolman, there is evidence from which a jury might conclude that it did not relate to the time of the accident. On direct examination the highway patrolman was asked if he had asked defendant if the latter was driving at the time of the accident and what defendant had responded. He testified that such was his question and that defendant had answered in the affirmative. On cross-examination, however, when he was again asked if he had specified the time to which his question related, he responded "No." Since this would cast some doubt as to what defendant intended by his answer, the

importance of cautionary instructions with respect to the other admissions becomes more apparent. Under all circumstances outlined we feel that, in the interests of justice, a new trial should be granted.

Reversed and new trial granted.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.