IN THE MATTER OF THE APPLICATION OF ROBERT H. GOLDBLATT, FOR A WRIT OF HABEAS CORPUS.

ROBERT H. GOLDBLATT, APPELLANT, *v.* J. C. HARRIS, SHERIFF OF ELKO COUNTY, RESPONDENT.

No. 4068

March 17, 1958.                               322 P.2d 902.

*Williams and Mann,* of Elko, for Appellant.

*F. Grant Sawyer,* District Attorney, *Joseph O. McDaniel,* Deputy District Attorney, of Elko County, and *Harvey Dickerson,* Attorney General, of Carson City, for Respondent.

## OPINION

By the Court, EATHER, J.:

Goldblatt had been held to answer following a preliminary hearing before the justice of the peace, charging appellant with involuntary manslaughter. He sought a discharge on habeas corpus, and this appeal is from the order of the district court "that the application for a permanent writ be denied, the petition dismissed, and the applicant remanded to the custody of the sheriff of Elko County."

The complaint charged that Goldblatt, on the 19th day of July, 1957 "* * * did commit a felony—involuntary manslaughter, as follows: that said defendant did then and there at approximately 5: 00 A. M. unlawfully and feloniously kill one Geryl Jordan, age 16, of Fresno, California, without any intent to do so, in the commission of an unlawful act, to-wit, driving and operating a westbound 1951 Dodge 2-door sedan in a reckless manner or in other than, in a careful and prudent manner upon a public highway * * * in that he did drive said westbound Dodge sedan across the center line of said highway and into the eastbound lane (S. ½) of said highway into the path of and collide with a 1957 Pontiac 4-door sedan which was proceeding in an easterly direction and lawfully occupying the eastbound lane of said highway at said time and place. * * * that Jordan, a passenger in the Pontiac, was killed and that defendant's recklessness was the proximate cause of his death."

NRS 200.070 provides: "Involuntary manslaughter shall consist in the killing of a human being, without

any intent so to do, in the commission of an unlawful act. * * *"

NRS 484.060 provides: "It shall be unlawful for any person to drive or operate a vehicle * * * (a) in a reckless manner on any street or highway in this state; or (b) in any other than a careful or prudent manner;" and that a person who violates such provisions shall be guilty of a misdemeanor.

Stats. of Nev. 1956–1957, 495, provide in part. "Sec. 72. Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules shall apply: 1. A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Violation is declared to be a misdemeanor.

NRS 193.190 reads as follows: "In every crime or public offense there must exist a union, or joint operation of act and intention, or criminal negligence."

NRS 171.450 provides: "If, after hearing the proofs, * * * it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense, the magistrate must order the defendant to be discharged. * * *"

NRS 171.455 provides: "If, however, it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, the magistrate must make "an order to such effect" and that defendant be held to answer.

In view of the foregoing statutory provisions, the question here presented is whether there was sufficient evidence presented at the preliminary hearing to establish that a public offense had been committed, and sufficient cause to believe the defendant guilty thereof. We look then at the evidence presented.

The accident occurred about daybreak, with sufficient daylight to observe objects more than 1,000 feet distant, in open country on a straight, flat, level, oiled highway 40 feet wide. Goldblatt was driving his 1951 Dodge in

a westerly direction and the car in which the deceased was riding was proceeding easterly three feet or more within its own lane, that is, three feet or more to the south of the white dividing line. At the time and place of impact defendant's car had veered out of its own westbound lane to a point from three to four and one-half feet into the eastbound or opposing lane of traffic. Geryl Jordan was killed in the resulting impact. Both vehicles were traveling at about 60 to 65 miles per hour. Shewmake and his wife, occupants of the eastbound car, first noticed defendant's car approaching at a distance of over 1,000 yards. At a distance of four or five car lengths they observed it swerving into their lane. From that instant to the time of the impact not more than about one second could have elapsed. Shewmake tried to swerve to his right but could not avoid the accident.

Appellant contends: "It would be incumbent upon the state to produce evidence to establish as a reasonable and probable proposition that appellant had committed an unlawful act and that the act was committed in such a manner as to show criminal negligence. Appellant contends that there is complete absence of proof to show either of these necessary elements." He contends that the occurrence of the collision as described does not establish that appellant performed any physical act which caused his vehicle to cross over the center line or with a state of mind indicating a reckless disregard for the rights of others; that it would be necessary, for example, to infer that the appellant was asleep under circumstances showing that he must have known that he was drowsy or sleepy, or that intoxication had affected his driving, or some other cause tending to establish criminal negligence; that on the contrary it could be equally inferred that a tire blew out, that he was blinded by lights, that there was some unforeseen mechanical failure, or that his attention might have been diverted by some object, or some other fact which would show accident, surprise or inadvertence; that the state has had to resort to speculation to determine the reason why defendant's car was in the opposing lane

of traffic; that this is applying the doctrine of res ipsa loquitur, which is contrary to the presumption of innocence and cannot be applied in a criminal case.

In support of these contentions appellant refers to a number of cases which we shall not discuss, as they had to do with the actual trial of actions in which proof was required beyond a reasonable doubt. The extent of proof necessary at a preliminary examination in order to hold the defendant to answer, NRS 171.450–171.455, supra, has been considered by this court on several occasions.

In In Re Kelly, 28 Nev. 491, 499, 83 P. 223, 226, this court said: "In order to hold defendant and put him on his trial, the committing magistrate is not required to find evidence sufficient to warrant a conviction. All that is required is that there be sufficient legal evidence *to make it appear* that 'a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof.' " (Italics supplied.) To the same effect, In Re Oxley and Mulvaney, 38 Nev. 379, 149 P. 992: Ex Parte Molino, 39 Nev. 360, 157 P. 1012; Ex Parte Liotard, 47 Nev. 169, 217 P. 960, 30 A.L.R. 63; In Re Mitchell, 1 Cal.App. 396, 82 P. 347.

Under such construction of the functions of the committing magistrate we hardly feel that it was his duty to pass upon the points of distinction between simple negligence, recklessness, culpable negligence, criminal negligence, lack of care or prudence or other degree of negligence. To what extent the questions raised by appellant may be material to the issues upon the trial of the action, we are not called upon to determine.

Appellant relies upon the language used by the court in Ex Parte Whitlatch, 60 Cal.App.2d 189, 140 P.2d 457, 459. The California traffic statute there under consideration required a showing of "willful indifference or reckless disregard to the safety of others." Nor is the case in point on its facts. There was no evidence as to speed and no evidence as to visibility of the parked car struck by defendant's vehicle, which was proceeding in its own lane, and nothing to warrant an inference either of

speed or visibility. Under those and other conditions recited in the opinion the court properly held that there was lack of probable cause to hold the defendant to answer.

Appellant distinguishes the present case from cases holding that it is recklessness and evidence of criminal or culpable negligence to drive on the left side of a public highway on approaching the brow of a hill or a blind curve. (Potter v. State, 174 Tenn. 118, 124 S.W. 2d 232; People v. Seiler, 57 Cal.App. 195, 207 P. 396; People v. Marconi, 118 Cal.App. 683, 5 P.2d 974; Wells v. State, 162 Miss. 617, 139 So. 859; State v. Jessup, 183 N.C. 771, 111 S.E. 523), because in such cases it was apparent that the defendant had a purpose in thus using the wrong lane, while in the present case no such purpose was either shown or could be inferred. In our opinion the answer to this argument is simply that the evidence showed that defendant, in violation of statute, was driving in the opposing lane of traffic, which act endangered his own life and the lives of others, and, in the absence of circumstances constituting an excuse, was wrongful and unlawful. For the purposes of the preliminary examination, it was not incumbent upon the state to negative every possible circumstance that might have excused or explained his action. The situation is not one in which the state is drawing an unwarranted inference. It is one in which, on the contrary, the committing magistrate was not called upon to draw an inference that, under the proved facts, there might have been some possible explanation or excuse for defendant's presence in the eastbound traffic lane.

Affirmed.

BADT, C. J., and MERRILL, J., concur.