THOMAS BURKE HANLEY, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

Nos. 5744 and 5745

March 12, 1969 451 P.2d 852

*Harry E. Claiborne* and *Albert M. Dreyer,* of Las Vegas,
for Appellant.

*Harvey Dickerson,* Attorney General; and *George E. Frank-lin, Jr.,* District Attorney, and *Earl Gripentrog,* Deputy District
Attorney, Clark County, for Respondent.

**OPINION**

By the Court, MOWBRAY, J.:

*I. CASE NO. 5744*

Thomas Burke Hanley has been charged with the murder of Ralph Alsup, and he is awaiting arraignment in the district court, pending the outcome of this appeal from the district judge's order denying Hanley's application for a writ of habeas corpus. This petition for habeas is predicated upon Hanley's assertion that there was insufficient evidence presented at the preliminary hearing to establish the necessary probable cause to hold him to answer in the district court.

About 11 o'clock in the evening of January 19, 1966, Alsup returned to his residence in Clark County after attending a political meeting in Las Vegas. He never reached his house, because as he entered the gate leading into his yard he was ambushed at rather close range by an unknown assailant, who felled him with a blast from a shotgun. Mrs. Alsup, who was in their home preparing to retire for the evening, heard the "explosion" and rushed to her husband's aid. Alsup died almost immediately. The sheriff's authorities were called, and they conducted their usual investigation. The chief medical examiner for the county, Dr. James Clarke, did an autopsy on Alsup's remains.

NRS 171.206[1] requires the magistrate to hold a defendant to answer if it appears from the preliminary examination "that there is probable cause to believe an offense has been committed and that the defendant has committed it." Appellant does not question that sufficient proof of the corpus delecti of the crime, i.e., the fact of death and the criminal agency of another causing death, has been established. Sefton v. State, 72 Nev. 106, 295 P.2d 385 (1956); State v. Fouquette, 67 Nev. 505, 221 P.2d 404 (1950). The issue presented for our determination is whether the evidence adduced at the hearing establishes "probable cause" to believe Hanley guilty of the offense charged.

Before we turn to consider the evidence for the sole purpose of making that determination, it would be well to reiterate the guidelines this court laid down in Beasley v. Lamb, 79 Nev. 78, 80, 378 P.2d 524, 525 (1963), where we said:

". . . it is not our function, nor was it the function of the magistrate at the preliminary hearing, or the district court upon the habeas corpus proceeding, to pass upon the sufficiency of the evidence to justify conviction. State v. Fuchs, 78 Nev. 63, 368 P.2d 869. Nor do the words 'sufficient cause,' [the present statute has substituted 'probable cause'] as employed in the statute, require the state to negate all inferences which might excuse or explain the accused's conduct. Goldblatt v. Harris, 74 Nev. 74, 322 P.2d 902."

If the evidence produced at the preliminary hearing will establish a reasonable inference that Hanley killed Alsup or aided or abetted one who did, whether present or not, or directly or indirectly counseled, encouraged, or hired another who did so, probable cause to order him to answer has been established. NRS 195.020[2]; Beasley v. Lamb, supra.

[1] NRS 171.206. "Procedure following preliminary examination. If from the evidence it appears to the magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall forthwith hold him to answer in the district court; otherwise the magistrate shall discharge him. The magistrate shall admit the defendant to bail as provided in this Title. After concluding the proceeding the magistrate shall transmit forthwith to the clerk of the district court all papers in the proceeding and any bail taken by him."

[2] NRS 195.020. "Who are principals. Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces

Deputy Sheriff Walter Butt testified that he found footprints of one person starting approximately 1 mile from Alsup's home which led to a pickup truck parked in Alsup's yard; that from the tracks made around the truck it appeared the person had been waiting for a period of time at that location; that the same tracks returned to the point of origin where, from the markings in the desert, it appeared a vehicle had been parked; that in the vicinity of the return path parts of a shotgun, i.e., a gun barrel, a stock, and a clip, were found.

Alexander Marathon testified that this shotgun belonged to Hanley. Sheriff's Crime Lab Commander Lee McCullough identified photographs of the scene of the homicide, and he testified that, from the physical evidence presented, it was his opinion that Alsup was shot by a person standing near the right front fender of the pickup truck.

Alexander Marathon testified that he had known Hanley for several years and that from December 28, 1965, through January 6, 1966, he had lived in Hanley's home in Las Vegas. He testified regarding a conversation he had with Hanley in Hanley's house shortly after Christmas 1965, as follows:

"Q. (By Mr. Gripentrog) First of all, where did the conversation take place?

"A. At Tom's home, 1621 Ogden.

"Q. Who was present?

"A. Tom was by himself at the time and asked me if I was willing to make some money, if I was interested in making some money, and I said, 'Concerning what?'

"He said, 'Well, we have somebody that is a good friend of mine that has to be eliminated.' And then he went on to tell me that it was Ralph Alsup, Sr., and I told him I wasn't interested for the simple reason Ralph had always been good to me. I didn't want to get involved in it because I do—I had been in trouble before and I just didn't want nothing to do with it.

"Q. That statement was that he wanted to eliminate Ralph Alsup; is that—

"A. Yes, sir.

"Q. Did he mention to you how much money you would stand to make if you eliminated—

"A. Yes, it was $5,000."

---

or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

Marathon identified photos of the other defendants, Carl Black and Norman Call. He claims that the following conversation occurred in the Hanley home on December 28, 1965, when he, Hanley, Black, Call, Mary Lou Hanley, Barbara Simons and an Alphonse Bass were present:

"Q. [By Mr. Gripentrog] What was said by Mr. Hanley?

"A. Well, as I remember, the conversation started that— Mr. Black started the conversation, said, "Tom, we've arranged for a trigger man to take care of Alsup. All we need is the money and the job will be taken care of.

"Q. What did the defendant Hanley say at that time?

"A. Well, he said, 'Okay.'

"He said, 'Do you think you fellows can handle it properly?' And Mr. Black assured him that the job would be done the proper way.

"MR. GALE: 'Mr. Black assured'—I will move to strike that as being a conclusion of the witness.

"THE COURT: Is that the statement that was made?

"THE WITNESS: Mr. Black said that the job would be done properly.

"THE COURT: That will be stricken.

"Q. (By Mr. Gripentrog) What else was said at this time?

"A. Well, there was a discussion of money. There was five thousand dollars involved. They were guaranteed three thousand in advance and two thousand when the job was completed.

"MR. GALE: I would move 'They were guaranteed' be stricken as a conclusion of this witness.

"THE COURT: Only what was said. Is that what was said?

"THE WITNESS: Well, he told Tom, Mr. Black, that he would receive three thousand dollars in front, and after Mr. Alsup was dead he would get the remaining two thousand dollars.

"THE COURT: The other part will be stricken—'guaranteed.'

"Q. (By Mr. Gripentrog) And what was said next?

"A. They wanted to know what type of equipment would be used and at that time they said a shotgun would be the weapon.

"Q. Who said a shotgun would be the weapon?

"A. Mr. Tom Hanley.

"Q. Mr. Black asked what type of equipment would be used?

"A. He was told what type of equipment would be used.

"Q. By the defendant, Hanley?

"A. Yes, sir.

"Q. And what else was said?

"A. Well, at the time the meeting broke up and they were supposed to meet around the first of the year to go ahead and discuss the rest of the details."

Appellant concedes that the testimony adduced at the hearing tends to establish that appellant hired and paid two men to murder the deceased and that the component parts of a shotgun which belonged to Hanley were found from 1 to 3 days after the murder at varying distances from a path of footprints leading to and from the scene of the crime. Appellant urges that this is insufficient to show probable cause that Hanley committed the offense charged, because the State failed to prove that the gun found was the one used to kill Alsup, and that there is a total absence of evidence showing that Call or Black or anyone connected with them shot Alsup. Therefore, the issue we must decide is whether a person may be held to answer for inducing or hiring another to commit a crime, in the absence of any proof that the person hired did the actual killing. We conclude that he may be held to answer. In Gray v. United States, 260 F.2d 483, 484 (D.C.Cir. 1958), the court held: "As said in Meredith v. United States, 4 Cir., 1956, 238 F.2d 535, 542,

" 'conviction of the principal actor is not a prerequisite to conviction of the aider and abettor. It need only be established that the act constituting the offense was in fact committed by someone. * * *'

"Accord, Colosacco v. United States, 10 Cir., 1952, 196 F.2d 165, 167."

See also Cross v. United States, 354 F.2d 512 (D.C.Cir. 1965); State v. Jones, 7 Nev. 408 (1872); and State v. Cushing, 61 Nev. 132, 120 P.2d 208 (1941).

In Jones, which was a trial, as were the other cited cases, and not a preliminary hearing, the court said, at 418:

"The third instruction was properly rejected because, under the statute of this state, it is not essential to the conviction of accessories before the fact that the prosecution first prove the guilt of the principal. It was only necessary to show that a larceny had been committed, and that the defendants, if they were present, aided and assisted, or if not present, that they advised or encouraged it."

And again, in Cushing, our court held, at 146:

"The holding of our supreme court to that effect is recognized in 22 C.J.S., Criminal Law, sec. 105, p. 179, wherein it is said in note 59 to the text: 'In Nevada, under such a statute as is contemplated by the text [statutes which abolish the distinction between principals and accessories], while the prosecution must show that a felony has been committed and that the accused instigated its commission, still it has been held not necessary to prove by whom the felony was committed.'

". . . While the state might not, in a given case, be able to prove the identity of the principal offender, that fact should not become a shield to all who may have been concerned as accessories before the fact. As stated in People v. Mangiapane, 219 Mich. 62, 188 N.W. 401, 402: 'The effect of our statute is to permit the prosecution of one who aids and abets, without regard to the conviction or acquittal of one who, under the common law, would have been called the principal. That is what the statute intended to accomplish in abrogating the common-law rule.' See People v. Smith, 271 Mich. 553, 260 N.W. 911."

And finally, in interpreting the federal statute (similar to ours) which did away with the distinction between principals and accessories before and after the fact, the court held, in Von Patzoll v. United States, 163 F.2d 216 (10th Cir. 1947), at 218:

"18 U.S.C.A., § 550 provides, 'whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.'

"This statute does away with the subtle distinctions recognized, with respect to felonies at common law, between principals and accessories before and at the fact and makes them all principals, whether the offense is a felony or a misdemeanor.

"Conviction of the principal is not a prerequisite to the conviction of the aider and abettor.

"And the acquittal of the principal presents no impediment to the trial and conviction of a person charged with aiding and abetting the commission of the crime. This because one who aids or abets the commission of a crime is guilty as a principal of a substantive, independent offense.

"The proof must establish that the offense was committed by some one and that the person charged as an aider and abettor, aided and abetted in its commission. However, it is

not necessary to identify the actual perpetrator of the crime. He may be unknown." (Footnotes omitted.)

We have not been asked to pass on the guilt or innocence of the appellant, Hanley. This will be the duty of the court or the jury before whom Hanley will stand trial. Our sole function at this juncture is to determine whether all the evidence received at the preliminary hearing, "taken together, establishes probable cause to believe that an offense has been committed and that the defendant committed it." NRS 172.155. We so conclude, and we order that the appeal from the order denying appellant's petition for a writ of habeas corpus in this case be denied.

## II. CASE NO. 5745

This appeal has been consolidated with Case No. 5744 above. In this case Hanley filed in the district court his petition for a writ of habeas corpus seeking bail pending his trial. The district judge denied the writ and refused bail; hence, this appeal. Article 1, section 7, of the Constitution of the State of Nevada provides:

"Bail; capital offenses. All persons shall be bailable by sufficient sureties; unless for Capital Offenses when the proof is evident, or the presumption great."

Likewise, the Nevada Legislature in 1967 provided, in NRS 178.484:

"Right to bail before conviction.

"1. A person arrested for an offense not punishable by death shall be admitted to bail.

"2. A person arrested for an offense punishable by death may be admitted to bail unless the proof is evident or the presumption great by any competent court or magistrate authorized by law to do so in the exercise of discretion, giving due weight to the evidence and to the nature and circumstances of the offense."

The quantum of proof necessary to establish the presumption of guilt mentioned in the Constitution and the statute is considerably greater than that required to establish the probable cause necessary to hold a person answerable for an offense. As this court said in Howard v. Sheriff, 83 Nev. 48, 52, 422 P.2d 538, 540 (1967): "The evident proof or great presumption required by the Constitution before bail may be

denied one accused of a capital offense, contemplates more than a mere inference of guilt of some crime (either first degree murder or a lesser included offense) which may suffice to hold one for trial in the district court. Cf. Beasley v. Lamb, 79 Nev. 78, 378 P.2d 524 (1963)."

A review of the record in this case, as set forth in Case No. 5744 above, fails to show the evident proof or the great presumption of guilt which must be present if bail is to be denied. We therefore order that this case be remanded to the district court and that Hanley be released on bail on a reasonable sum which shall be fixed by the district judge.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.