TERRY W. GORDON AND JOHN F. SWEENEY, PETITION-
ERS, v. THE EIGHTH JUDICIAL DISTRICT COURT
OF THE STATE OF NEVADA, IN AND FOR THE
COUNTY OF CLARK, AND THE HONORABLE JOSEPH
T. BONAVENTURE, DISTRICT JUDGE, RESPONDENTS,
AND THE STATE OF NEVADA, REAL PARTY IN INTER-
EST.

No. 26722

March 1, 1996                          913 P.2d 240

*Dominic P. Gentile, Ltd.* and *JoNell Thomas,* Las Vegas, for
Petitioner Gordon.

*Laura Wightman FitzSimmons,* Las Vegas, for Petitioner
Sweeney.

*Stewart Bell,* District Attorney and *Frank Ponticello,* Deputy
District Attorney, Clark County, for Respondents, Eighth Judi-
cial District Court and The Honorable Joseph T. Bonaventure,
District Judge.

# OPINION

*Per Curiam:*

This original petition for a writ of mandamus, or in the alternative, for a writ of prohibition, challenges two district court orders denying petitioners' motions to dismiss an indictment on the following grounds: (1) violation of the Double Jeopardy Clause,[1] and (2) various defects in the indictment. We conclude that the district court properly denied petitioners' motions.

In October 1993, the Clark County District Attorney filed a civil forfeiture action against petitioners generally alleging that petitioners received proceeds derived from racketeering activity and seeking forfeiture of those proceeds. In January 1994, the district court dismissed that complaint on the ground that the plaintiff lacked standing, and ordered that funds seized from the defendants, here petitioners, be returned. Subsequently, in April 1994, the district attorney filed a criminal indictment charging petitioners with three counts of obtaining money under false pretenses, twelve counts of attempting to obtain money under false pretenses, two counts of racketeering, and two counts of conspiracy to commit racketeering. Petitioners initially filed a motion to dismiss the indictment on the ground that the indictment suffered from various defects. Subsequently, petitioners filed a motion to dismiss the indictment on the ground that their double jeopardy rights were violated. The district court denied both motions. Petitioners then filed in the district court a petition for a writ of mandamus, which the district court also denied. This court subsequently affirmed that decision and order. Gordon v. Ponticello, 110 Nev. 1015, 879 P.2d 741 (1994).

On February 27, 1995, petitioners filed this original petition for a writ of mandamus, or in the alternative, a writ of prohibition, arguing, *inter alia,* that proceeding on the indictment violates the Double Jeopardy Clause since it constitutes a second prosecution for the same conduct. Petitioners rely upon the relatively recent case of United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir. 1994), *amended on denial of reh'g,* 56 F.3d 41 (1995), *cert. granted,* 64 U.S.L.W. 3477, 3484 (U.S. Jan. 16, 1996). In *$405,089.23,* eight months after a criminal conviction, a judgment was entered in a parallel civil forfeiture

---

[1]The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Article 1, section 8 of the Nevada Constitution provides: "No person shall be subject to be twice put in jeopardy for the same offense."

action which relied upon the criminal conviction and other evidence. The Ninth Circuit determined that, since (1) the criminal prosecution and the civil forfeiture action were separate "proceedings," and (2) the civil forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) constituted "punishment," "the government's actions constituted a successive attempt to impose punishment, in violation of the Double Jeopardy Clause." *Id.* at 1216.

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). In *Halper,* the Court explained that a "punitive" civil sanction following a criminal prosecution may violate the prohibition against double jeopardy. "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment. . . ." *Id.* at 448. The Court subsequently applied the *Halper* test to conclude that a civil forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7) constituted "punishment." Austin v. United States, 509 U.S. 602, 113 S. Ct. 2801, 2812 (1993). In addition, the Court has held that a penal tax imposed after a criminal conviction for the same offense was "punishment" which violated the Double Jeopardy Clause. Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 784, 114 S. Ct. 1937, 1948 (1994). In the instant case, however, these authorities are inapposite. We conclude that because judgment was never entered in the civil forfeiture action, jeopardy never attached in that proceeding. Therefore, proceeding on the criminal indictment cannot constitute double jeopardy.

In analyzing double jeopardy issues a determination must first be made that the offenses upon which the civil and criminal actions are based are the same. Blockburger v. United States, 284 U.S. 299 (1932). If so, the next inquiry is whether the actions took place in separate proceedings and whether the civil forfeiture constitutes "punishment." If the civil forfeiture does not constitute "punishment," then the analysis ends because multiple punishments have not been imposed. If, however, the civil forfeiture does constitute "punishment," the court then determines at what point jeopardy attached in each proceeding—the civil and the criminal—to determine which "punishment" was imposed first. Obviously, a second "punishment" violates the prohibition

against double jeopardy. However, if jeopardy never attached to the first "punishment," then the analysis ends. *See* United States v. Pierce, 60 F.3d 886, 889 (1st Cir. 1995).

In the instant case, the civil forfeiture complaint was filed on October 25, 1993. On January 14, 1994, after a hearing, the district court granted petitioners' motion to dismiss on the ground that "[p]laintiff lacks standing for bringing this action." On April 11, 1994, a criminal indictment was filed. On September 22, 1994, petitioners filed a motion to dismiss the indictment, which the district court denied. On November 7, 1994, petitioners filed a motion to dismiss the indictment on the ground that it violated the prohibition against double jeopardy, which the district court also denied.

Since we conclude that jeopardy never attached in the civil forfeiture action, we begin and end our analysis here. Jeopardy attaches in a civil forfeiture action when the final judgment of forfeiture is entered. *See* United States v. Chick, 61 F.3d 682, 686 (9th Cir. 1995); United States v. Ursery, 59 F.3d 568, 571 (6th Cir. 1995), *cert. granted*, 64 U.S.L.W. 3477, 3484 (U.S. Jan. 16, 1996); United States v. Tamez, 881 F. Supp. 460, 466 (E.D. Wash. 1995); United States v. Stanwood, 872 F. Supp. 791, 798 (D. Or. 1994). Jeopardy never attached in the civil forfeiture action since no judgment of forfeiture was ever entered. Therefore, the criminal indictment does not place petitioners in jeopardy for a second time.[2] Likewise, jeopardy would not attach to a civil forfeiture judgment if the government first proceeded on an indictment which was dismissed before the jurors were impanelled. *See* Crist v. Bretz, 437 U.S. 28, 38 (1978) (in criminal jury trials, jeopardy attaches when the jury is sworn).

For the above reasons, we hold that the district court did not err in denying petitioners' motion to dismiss the indictment on double jeopardy grounds. We also hold that the district court did not err in denying petitioners' motion to dismiss the indictment for alleged deficiencies in the indictment. This holding is next discussed.

Petitioners argued below and assert now that the indictment

---

[2]As the First Circuit pointed out in United States v. Pierce, 60 F.3d 886, 889 (1st Cir. 1995), the Double Jeopardy Clause does not come into play until the claimant has first been placed in jeopardy. After the claimant has been placed in jeopardy once, only the second proceeding is constitutionally endangered, since the Clause protects " 'an individual from being subjected to the hazards of trial and possible conviction *more than once* for an alleged offense.' " *Id.* (quoting Green v. United States, 355 U.S. 184, 187 (1957)).

should have been dismissed for the following reasons. First, Petitioners allege that the grand jury indictment is defective because not all twelve jurors were present at every session. Several grand jurors apparently each missed one grand jury session and read a transcript of that session in lieu of attendance. Petitioners argue that the transcript does not qualify as "legally valid evidence" pursuant to NRS 172.135.[3]

The State acknowledges that three jurors each missed one session. Those grand jurors stated that they read the transcript of the session they missed. The State concedes that the transcripts are hearsay. However, the State argues that this does not mandate dismissal of the indictment since twelve grand jurors concurred in the indictment.

NRS 172.255(1) provides that "[a] presentment or indictment may be found only upon the concurrence of 12 or more jurors." Since twelve grand jurors voted for the indictment, the indictment complied with this provision. Concerning grand juror absences, this court has indicated that "there is no express statutory provision prohibiting the absence of a grand juror from one meeting." Johnston v. State, 107 Nev. 944, 947, 822 P.2d 1118, 1120 (1991). Further, the *Johnston* court noted that

> [n]or is there an express provision requiring seventeen members every time the selected grand jury meets. In fact, there is a long-standing practice of carrying on the proceedings, regardless of whether or not all seventeen grand jurors are present. *As long as at least twelve members hear the matter presented and vote to return an indictment against the defendant, the court has complied with the requirements. See NRS 172.255.*

*Id.* (Emphasis added).

We hold that an indictment should not be dismissed if the requisite number of jurors are "informed," i.e., are either present to hear testimony or read testimony given in their

---

[3]Petitioners argued before the district court that Judge Whitehead dismissed an indictment in "State v. Champion" where jurors in the grand jury were absent. We have reviewed a copy of Judge Whitehead's Order, which totaled 173 pages. The order was filed as an appendix to the respondent's brief in State v. Bayus, Docket No. 25686 (August 25, 1994). Apparently, in that case, only five of the grand jurors who had been present for all of the testimony were present for the vote, and the other grand jurors "had to rely upon what they were told from the jurors who happened to be there or what they might read and glean from the file." This is distinguishable from the instant case, where seven of the grand jurors were present for the live testimony, where the other three read the transcript from the day they missed, and where twelve were present for the vote.

absence. *See* United States v. Roberts, 481 F. Supp. 1385, 1388 (C.D. Cal. 1980) (where only eleven, not twelve, jurors were "informed," indictment was dismissed).[4] Because the grand juror absences in the instant case were not due to the failure of the prosecutor to forthrightly present evidence on the claims in the indictment, and because only three grand jurors each missed one session, read the transcripts from that session, and concluded that the prosecution had proven the allegations in the indictment, the grand jurors were "informed," and the indictment should not be dismissed on this ground.

Nevertheless, petitioners argue that the transcripts are hearsay and do not constitute "legally valid evidence" under NRS 172.135 and, the jurors who missed a session did not see exhibits which were introduced at that session.[5]

NRS 172.135(2) (Evidence receivable before grand jury) provides: "The grand jury can receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence." This court has never held that transcript testimony is inadmissible under NRS 172.135(2). Moreover, we assume the definition of hearsay as used in NRS 172.135(2) is the same as that found in NRS 51.035 and, thus, is subject to the hearsay exceptions. NRS 51.075(1) provides: "A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not

---

[4]Other cases hold that so long as twelve jurors return an indictment, all are not required to attend every session. This relies upon the rationale as set out by Judge Learned Hand:

> Since all the evidence adduced before a grand jury . . . is aimed at proving guilt, the absence of some jurors during some part of the hearing will ordinarily merely weaken the prosecution's case. If what the absentees actually hear is enough to satisfy them, there would seem to be no reason why they should not vote.

United States *ex rel.* McCann v. Thompson, 144 F.2d 604, 607 (2d Cir.), *cert. denied*, 323 U.S. 790 (1944); *see* United States v. Sugar, 606 F. Supp. 1134, 1143 (S.D.N.Y. 1985).

The *Thompson* rationale is not dispositive in Nevada since exculpatory evidence must be presented to a grand jury in Nevada and since that exculpatory evidence may be produced during a hearing that a juror misses. However, the remedy for this would seem to be to produce a transcript of the missed hearing. *See* State v. Corpuz, 690 P.2d 282, 285 (Haw. 1984) (defendant must show that she suffered prejudice from presentation of hearsay evidence).

[5]As for the alleged failure of the absent grand jurors to review the exhibits they missed, we note that when a grand jury convenes, the grand jurors are responsible for investigating the allegations. The absent grand jurors were made aware of the existence of the exhibits and it is presumed that they saw them.

likely to be enhanced by calling the declarant as a witness, even though he is available." We believe that no greater assurances of accuracy of what witnesses testified to before the grand jury could be present than in an official transcript containing sworn testimony before that grand jury. Therefore, we hold that the indictment need not be dismissed because the grand jurors read transcripts.

Petitioners also contend that the indictment is defective because the State failed to inform the grand jury of an alleged conflict of interest—that the nightclub patrons were involved with the civil forfeiture action where the State requested treble damages.

Petitioners rely upon State v. Babayan, 106 Nev. 155, 787 P.2d 805 (1990). In *Babayan,* the grand jury returned indictments charging several defendants with multiple counts of child abuse causing substantial mental harm, sexual assault, and lewdness. *Id.* at 158, 787 P.2d at 809. Babayan moved to dismiss the charges against him, arguing that (1) the district attorney failed to present exculpatory evidence to the grand jury and (2) conflicts of interest existed. *Id.* at 163, 787 P.2d at 811-12. The district court dismissed the charges against Babayan. *Id.* at 163, 787 P.2d at 812. The State appealed. *Id.* at 165, 787 P.2d at 812. Concerning the conflict of interest issue, this court concluded that the district attorney's failure to inform the grand jury of a conflict of interest concerning therapists who were parents at the school and testified about the effects of the harm on the children "when coupled with other derelictions, supports the district court's dismissal of the indictments." *Id.* at 167, 787 P.2d at 814.

It is not clear that the district attorney's failure to inform the grand jurors about damages in the parallel civil action constitutes exculpatory evidence. NRS 172.145(2) provides that "[i]f the district attorney is aware of any evidence which will explain away the charge, he shall submit it to the grand jury." Informing the grand jury that the witnesses who were patrons at the nightclubs may receive compensation if the State succeeds in the parallel civil forfeiture action does not appear to be "exculpatory evidence" under the statute since it does not explain away the charge.

However, even if a conflict of interest exists and such conflict can be deemed exculpatory evidence, which thereby imposes an obligation on the State to reveal it to the grand jurors, we hold that the State's failure to do so does not warrant dismissal of the indictment. In *Babayan,* the district attorney's failure to inform the jurors of the therapists' conflict of interest was not the only

dereliction—it was one of a number of derelictions. 106 Nev. at 167, 787 P.2d at 814. By contrast, the failure of the district attorney's office to inform the grand jurors of the conflict in the instant case is the only instance of failing to present exculpatory evidence. Petitioners do not point to other exculpatory evidence which, when paired with this alleged violation, would mandate dismissal of the indictment.

Petitioners further contend that the indictment is defective because the State's instructions concerning the RICO charge were insufficient. The State concedes that an "elements" exhibit was "inadvertently not submitted to the grand jury." However, the State argues that in addition to reading the statutes to the grand jury, the district attorney explained how the elements of the crimes fit together in layperson's terms.

NRS 172.095(2) provides that "[b]efore seeking an indictment . . . the district attorney shall inform the grand jurors of the specific elements of any public offense which they may consider as the basis of the indictment." While the district attorney did not give the grand jury the "elements" exhibit, the district attorney read the charges to the jury, explained how they interrelated in layperson's terms, and asked the grand jurors if they had any questions. Admittedly, the RICO statute is complicated; however, we hold that where the district attorney complied with the statute, the indictment should not be dismissed.

Petitioners also contend that the indictment must be dismissed because "it is highly unlikely" that the grand jury complied with NRS 172.255(2) since the jury was never instructed that they had to vote separately on each person and each count. NRS 172.255(2) provides that "[t]he jurors shall vote separately on each person and each count included in a presentment or indictment." Pursuant to NRS 172.215(3)(b), the certified court reporter must not include the deliberations and voting of the grand jury in his notes. Thus, whether or not the grand jury dedicated only ten and one-half seconds to each charge, as petitioners allege, is unknown. The State argues that the voting process could have been brief because many of the charges in the proposed indictment were of a similar nature, i.e., obtaining or attempting to obtain money under false pretenses and racketeering and conspiracy to commit racketeering, and the grand jury did not have to consider different elements for each charge.

Petitioners cite Eureka Bank Cases, 35 Nev. 80, 125, 126 P.

655, 669 (1912), in support of their proposition that "a court can go behind an indictment, regular on its face, and determine if it is void for any latent defect." *Eureka Bank Cases* is distinguishable. In *Eureka Bank Cases,* the issue before the court was whether or not defendants could employ a petition for a writ of habeas corpus to challenge a criminal proceeding on the ground that their actions did not constitute a crime, or that insufficient evidence was presented on which to return an indictment. This court noted that it could go behind an indictment when there is insufficient evidence, or when the grand jurors falsely accuse someone. There was no discussion that the court may "go behind an indictment" when there is a suspicion that the jurors did not vote separately on each person and each count.

In the instant case, going behind the indictment is unwarranted. There is no allegation that there was insufficient evidence to arrive at a true bill, or that the jurors engaged in some kind of a personal vendetta against the petitioners. While the jurors only deliberated for ten minutes, there is no reason to believe that they did not follow the law simply on the basis of the brevity of the deliberation time. Thus, we conclude that the indictment should not be dismissed on this ground.

Petitioners also allege that the indictment is defective because the "aiding and abetting" allegations of Counts 4 through 15 fail to state an offense since the government did not allege and prove that a principal committed the offense to which the aider and abettor provided assistance. Essentially, petitioners seem to argue that aiding and abetting an offense which was never completed is not a crime.

To commit the crime of attempting to obtain money under false pretenses, the following are necessary: an intent to commit the crime, an overt act, and a failure to consummate the commission of the crime. NRS 193.330. Here, the State alleges that the nightclub employees used a "pitch"—that the purchase of a bottle of non-alcoholic wine would entitle the customer to have sex with a female employee—knowing that they would not deliver on this promise, which evidences an intent to commit the crime of obtaining money under false pretenses. Thus, each time the nightclub attempted to receive money under false pretenses, this crime was completed.

The State charges petitioners with aiding and abetting that attempt crime by owning/operating the nightclubs. This is consistent with Hanley v. State, 85 Nev. 154, 451 P.2d 852 (1969),

cited by petitioners, in which this court noted that "'conviction of the principal actor is not a prerequisite to conviction of the aider and abettor. It need only be established that the act constituting the offense was in fact committed by someone.'" *Id.* at 159, 451 P.2d at 856 (quoting Gray v. United States, 260 F.2d 483, 484 (D.C. Cir. 1958)). Nightclub employees attempted to obtain money under false pretenses. The State alleges that petitioners aided and abetted in the commission of this crime. Therefore, we hold that Counts 4 through 15 do not fail to state an offense.

Petitioners further contend that the State failed to allege sufficient facts showing how petitioners aided and abetted the nightclub employees in their attempt to obtain money under false pretenses. An indictment must contain a statement of the essential facts constituting the offense charged. NRS 173.075(1). "An accusation must include such a description of the acts alleged to have been committed as will enable the accused to defend against the accusation." Lane v. Torvinen, 97 Nev. 121, 123, 624 P.2d 1385, 1386 (1981); *see* Simpson v. District Court, 88 Nev. 654, 503 P.2d 1225 (1972). Here, Counts 4 through 15 of the indictment state that petitioners

> directly, or indirectly through their subordinates, counseled, encouraged, hired, commanded, induced, or otherwise procured the employees and/or agents of [the nightclub] to induce potential customers to purchase a bottle of non-alcoholic wine by directing the employees and/or agents of [the nightclub] if they were to purchase a bottle of non-alcoholic wine.

Each count also charges that petitioners (1) provided "a physical location and facilities from which to make said false representations" and (2) knew that the "pitch" was made without intention of letting the customer have sex with the female employees. *Torvinen* is distinguishable in that two counts "contain[ed] no facts whatsoever showing how [the defendant] aided and abetted the other defendants." 97 Nev. at 123, 624 P.2d at 1386. The pertinent counts of the instant indictment show that petitioners aided and abetted the nightclub employees by hiring them, inducing them to use a "pitch," and by providing them with a place in which to do this. We hold that this description is sufficient to put petitioners on notice of the acts alleged to have been committed.

Petitioners next contend that the indictment is defective, claiming that the RICO and criminal syndicate charges of Counts 16 through 19 are duplicitous because more than one offense is

charged in each count.[6] Duplicity concerns joining in a single count two or more distinct and separate offenses. 1 Charles A. Wright, *Federal Practice and Procedure* § 142 (2d ed. 1982). NRS 173.075(2) provides that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." In Jenkins v. District Court, 109 Nev. 337, 339-40, 849 P.2d 1055, 1057 (1993), this court noted that "[a]lthough a charging document may set forth alternative *means* of committing a crime within a single count, alternative *offenses* must be charged in separate counts." NRS 207.400(1) sets out various means of committing the offense of racketeering.[7] Since

---

[6]Petitioners further contend that the indictment "cumulatively" alleges different RICO offenses in Counts 16 through 19 instead of alleging alternative offenses by employing "and/or." However, this court has noted:

[Where] a single offense may be committed by one or more specified means, and those means are charged alternatively, the state need only prove one of the alternative means in order to sustain a conviction. Thus, notice of the charged offense is not improved by alleging that the crime was committed by acts "a" *and* "b" rather than by acts "a" *or* "b." In either case, the accused must prepare a defense to all means by which it is alleged the crime was committed.

State v. Kirkpatrick, 94 Nev. 628, 630, 584 P.2d 670, 671-72 (1978) (citations omitted). Thus, we conclude that where the indictment gives adequate notice to petitioners of the charges against them, as here, it is irrelevant that the indictment fails to charge using "and/or."

[7]NRS 207.400(1) provides:

1. It is unlawful for a person:
(a) Who has with criminal intent received any proceeds derived, directly or indirectly, from racketeering activity to use or invest, whether directly or indirectly, any part of the proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of:
(1) Any title to or any right, interest or equity in real property; or
(2) Any interest in or the establishment or operation of any enterprise.
(b) Through racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.
(c) Who is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in:
(1) The affairs of the enterprise through racketeering activity; or
(2) Racketeering activity through the affairs of the enterprise.
(d) Intentionally to organize, manage, direct, supervise or finance a criminal syndicate.
(e) Knowingly to incite or induce others to engage in violence or intimidation to promote or further the criminal objectives of the criminal syndicate.
(f) To furnish advice, assistance or direction in the conduct, financing or management of the affairs of the criminal syndicate with the intent to promote or further the criminal objectives of the syndicate.
(g) Intentionally to promote or further the criminal objectives of a

Counts 16 and 18 charge alternate means of committing the crime of racketeering and not alternative offenses, we hold that the indictment need not be dismissed on the basis that these counts are duplicitous.

However, petitioners further contend that if racketeering can be charged in one count and committed in various ways, then the indictment is multiplicitous because it charges the same offense in four separate counts—Counts 16 through 19. The State seems to concede that the indictment is multiplicitous, but argues that the proper remedy is to instruct the jury that it may only convict for one offense.

Multiplicity concerns the charging of a single offense in several counts. Wright, *supra.* The offense in Counts 16 and 18 is "racketeering." Counts 16 and 18 both allege that the petitioners were involved in *racketeering activity;* however, Count 16 alleges that petitioners conducted racketeering activity through an enterprise,[8] whereas Count 18 alleges direction of a criminal syndicate.[9] Counts 17 and 19 both allege *conspiracy;* however, Count 17 alleges conspiracy to commit racketeering through an enterprise, whereas Count 19 alleges conspiracy to participate in a criminal syndicate.

The general test for multiplicity is that offenses are separate if each requires proof of an additional fact that the other does not. Wright, *supra.* Further, " '[o]ffenses are . . . not multiplicitous when they occur at different times and different places, because they cannot then be said to arise out of a single wrongful act.' " State v. Woods, 825 P.2d 514, 521 (Kan.), *cert. denied,* 506 U.S.

criminal syndicate by inducing the commission of an act or the omission of an act by a public officer or employee which violates his official duty.

(h) To conspire to violate any of the provisions of this section.

[8]Count 16 alleges violations of NRS 207.400(1)(a), (b), and (c). NRS 207.380 defines "enterprise" as including:

1. Any natural person, sole proprietorship, partnership, corporation, business trust or other legal entity; and

2. Any union, association or other group of persons associated in fact although not a legal entity.

The term includes illicit as well as licit enterprises and governmental as well as other entities.

[9]Count 18 alleges violations of different subsections under the statute—NRS 207.400(1)(d) and (f). NRS 207.370 defines "criminal syndicate" to mean "any combination of persons, so structured that the organization will continue its operation even if individual members enter or leave the organization, which engages in or has the purpose of engaging in racketeering activity."

850, 113 S. Ct. 149 (1992) (quoting State v. Howard, 763 P.2d 607 (Kan. 1988)). Proving the existence of a criminal syndicate requires a showing that the syndicate continues its operation even if individual members enter or leave the organization. This is an element of Count 18 that need not be proven for Count 16, which concerns enterprise. Thus, we hold that Counts 16 and 18 are not multiplicitous.

We further hold that Counts 17 and 19, the conspiracy counts, are not multiplicitous in relation to the racketeering counts because conspiracy to commit an offense and the completed offense have traditionally been considered to constitute separate crimes. Wright, *supra*. In addition, we hold that the conspiracy counts themselves are not multiplicitous because they each require proof of an element that the other does not—the existence of a criminal syndicate as opposed to an enterprise.

Even if any of the above counts are multiplicitous, the remedy does not appear to be dismissal. Wright suggests that in a case where an indictment is multiplicitous, the defendant may move to have the prosecution elect which count it wishes to proceed upon, and the counts will be consolidated and all but the one elected dismissed, but this is discretionary with the court. *Id.* at § 145. Further, since the danger in multiplicity is that the defendant will be given multiple sentences for the same offense, various remedies are available. *Id.*

Petitioners further contend the indictment is defective due to the fact that Counts 18 and 19 fail to state an offense because they do not allege the existence of a *criminal* syndicate. Criminal syndicate is defined as "any combination of persons, so structured that the organization will continue its operation even if individual members enter or leave the organization, which engages in or has the purpose of engaging in racketeering activity." NRS 207.370. Petitioners maintain that they may not be charged with running a "criminal syndicate" since their businesses are legal corporations, and since their businesses must be illegal in order to charge them with "criminal syndicalism." However, under the plain language of the definition of "criminal syndicate," there is no requirement that the "organization" be an illegal organization; neither does the definition imply that the organization must be illegal, rather than legal. Therefore, we hold that the indictment need not be dismissed on this ground.

Finally, petitioners contend that Counts 16 through 19 fail to

allege a RICO enterprise with the clarity required by the Due Process Clause because with so many businesses named, petitioners do not know which one is the "enterprise" for purposes of the racketeering charges. In support, petitioners cite Jennings v. Emry, 910 F.2d 1434 (7th Cir. 1990). In *Jennings,* however, the complaint mentioned entities such as "numerous other named and unnamed people" and "various enterprises including [the] collective criminal enterprise." *Id.* at 1440 n.13. The instant indictment names specific enterprises and does not even approach the vagueness problem in *Jennings.*

NRS 173.075 provides that the indictment must be "a plain, concise and definite written statement of the essential facts constituting the offense charged."[10] A racketeering enterprise is broadly defined to include various kinds of associations, including corporations. NRS 207.380. We conclude that Counts 16 through 19 all comply with the requirements of NRS 173.075 in that they are plain and concise statements of the essential facts constituting the offenses. Thus, we hold that the indictment need not be dismissed on this ground.

In their petition, in a final footnote, petitioners argue that, pursuant to Margetts v. State, 107 Nev. 616, 818 P.2d 392 (1991), and Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986), the cumulative effect of the errors in the indictment warrants dismissal. The cases cited by petitioners concern reversal for error at trial, not irregularities in an indictment. Both *Margetts* and *Sipsas* were appeals from judgments of conviction. Here, cumulative error permeated the indictment, there is no reason why it should not be dismissed; however, since we have held that there is no such error, this argument must fail.

---

[10]NRS 173.075 provides:

   1. The indictment or the information must be a plain, concise and definite written statement of the essential facts constituting the offense charged. It must be signed by the attorney general acting pursuant to a specific statute or the district attorney. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to the statement.

   2. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means.

   3. The indictment or information must state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission is not a ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

Accordingly, we conclude that issuance of a writ of mandamus or prohibition is unwarranted.[11] We deny the petition.

---

[11]A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, NRS 34.160, or to control an arbitrary or capricious exercise of discretion. *See* Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). A writ of prohibition arrests the proceedings of any tribunal exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of that tribunal. Hylton v. District Court, 103 Nev. 418, 421, 743 P.2d 622, 624 (1987); *see* NRS 34.320.