SCOTT HENRY BEDARD, APPELLANT, v. THE
STATE OF NEVADA, RESPONDENT.

No. 37237

June 12, 2002                                    48 P.3d 46

*Michael V. Cristalli,* Las Vegas; *Kajioka, Christiansen & Toti,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Scott Henry Bedard raises several arguments on appeal. However, this opinion will focus on whether the burglary counts in the criminal indictment violate the rule against multiplicity, an issue of first impression.

We conclude that Bedard was properly charged with several counts of burglary because his entry into several suites within an office building cannot be said to have arisen out of a single wrongful act. Therefore, we affirm his convictions and sentence.

### FACTS

On August 6, 1997, Bedard unlawfully entered the Templeton Plaza, an office building located in Las Vegas. Upon entering, Bedard broke into several offices inside the building, stealing a .22 caliber pistol and two laptop computers.

While inside, Bedard was discovered by William Hanlon. Bedard ordered Hanlon to his knees and fatally shot him in the head. Police later discovered Hanlon on his hands and knees, clutching his open wallet. Some of Hanlon's credit cards were scattered on the floor near the body, and no money was found in the wallet.

After shooting Hanlon, Bedard left the building and went to a nearby donut store. There, he was videotaped buying coffee and appeared to be carrying several items. At some point, Bedard called Alena Aresco and asked her for a ride. Unable to do so, Aresco asked Alex Merriam, a neighbor, to pick up Bedard from the donut store, which he did. Merriam noticed that Bedard was carrying two computer bags, his hand was cut, and blood was on one of his socks. At trial, Merriam testified that Bedard told him

that he got into a confrontation with a janitor, made the janitor get on the ground on his knees, Bedard blacked out, and then the janitor was dead on the ground.

Merriam drove Bedard to Aresco's apartment, where Bedard told Aresco that he had shot someone and gave Aresco the gun and the computers. Aresco placed the items in her closet. After Bedard left her apartment, Aresco discussed the situation with Charles Williams, her boyfriend. Williams, hoping to collect a reward, called the police and told them of Bedard's statements to Aresco. Thereafter, Williams escorted the police to Aresco's apartment to retrieve the gun and the computers.

When the police arrived at Aresco's apartment, they were informed that Aresco had removed the gun and the computers and h ad taken them to 7505 Blue Sage Court, a house owned by her mother, Ruth Ganjei. Bedard had lived at that address and kept a storage unit in the third-car garage where he stored personal items. Aresco had placed the gun and the computers in Bedard's storage area. The storage unit also contained a motorcycle and "Christmas stuff" belonging to Ganjei.

Later that night, Aresco escorted the police to her mother's home. The officers obtained both verbal and written consent from Ganjei before entering the storage area to retrieve the murder weapon and the stolen computers. The gun found was matched to the bullet that killed Hanlon, and the computers were identified as having been stolen from the crime scene.

Prior to trial, Bedard moved to suppress the murder weapon and the stolen computers on the ground that the search was illegal. In the motion, Bedard argued that he possessed a reasonable expectation of privacy in the storage area within Ganjei's garage and that the search violated his Fourth Amendment rights. The district court held a two-day evidentiary hearing and ruled that the search was valid and, therefore, the evidence was admissible.

After a jury trial, Bedard was convicted of first-degree murder, robbery with the use of a deadly weapon, ten counts of burglary, and three counts of grand larceny.

## DISCUSSION

Bedard argues that counts IV, V, VII, IX, XIII, XIV, and XVII of the criminal indictment are multiplicitous of count I and should have been dismissed. More specifically, Bedard contends that the counts charging him with burglary of individual office suites within the Templeton Plaza are redundant with count I, which charges him with burglary of the Templeton Plaza itself. Therefore, Bedard contends that since all these charges arose out

of one act, the indictment divides a single act into several different charges, in violation of the policy behind the multiplicity rule.[1]

NRS 205.060(1) provides that a burglary is committed when a person enters "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with the intent to commit grand or petit larceny." Although we have decided numerous cases dealing with the burglary statute, we have yet to address the issue of whether a defendant can be charged with multiple counts of burglary for entry into separate rooms in a single structure with the intent to steal.

A multiplicitous indictment is "one charging the same offense in more than one count."[2] An indictment that charges a single offense in several counts violates the rule against multiplicity.[3] We have stated that "[t]he general test for multiplicity is that offenses are separate if each requires proof of an additional fact that the other does not."[4] It follows that " ' "[o]ffenses are . . . not multiplicitous when they occur at different times and different places, because they cannot then be said to arise out of a single wrongful act." ' "[5]

California Penal Code § 459, the California burglary statute, is very similar to NRS 205.060. California courts have long affirmed burglary convictions for entry into separate rooms in a single structure.[6] Dealing with a similar issue to that before us, the California Supreme Court noted the following:

> Here defendant forcibly broke into three different rented premises occupied by tenants who had no common interest other than the fortuitous circumstance that they happened to lease office suites in the same commercial building. There is no doubt that if the premises had been located in three separate buildings defendant could have been punished for three separate burglaries; he is not entitled to two exempt burglaries merely because his victims chose the same landlord. If the rule were otherwise, a thief who broke into and ransacked every store in a shopping center under one roof, or

[1]Additionally, Bedard informs this court that he was charged with burglarizing three suites that were occupied by the owners of the Templeton Plaza and two suites that were not occupied by anyone.

[2]*United States v. Sue,* 586 F.2d 70, 71 n.1 (8th Cir. 1978).

[3]*United States v. UCO Oil Co.,* 546 F.2d 833, 835 (9th Cir. 1976).

[4]*Gordon v. District Court,* 112 Nev. 216, 229, 913 P.2d 240, 249 (1996).

[5]*Id.* (quoting *State v. Woods,* 825 P.2d 514, 521 (Kan. 1992) (quoting *State v. Howard,* 763 P.2d 607, 610 (Kan. 1988))).

[6]*People v. Elsey,* 97 Cal. Rptr. 2d 269 (Ct. App. 2000); *People v. Church,* 264 Cal. Rptr. 49 (Ct. App. 1989), *disapproved on other grounds by People v. Bouzas,* 807 P.2d 1076 (Cal. 1991).

every apartment in an apartment building, or every room or suite in a hotel, could claim immunity for all but one of the burglaries thus perpetrated.[7]

In this case, contrary to Bedard's contentions, we conclude that every separate entry into each of the suites occurred at a different time and a different place. The Templeton Plaza is an office building. The interior of the building includes a hallway leading to a number of office suites. Each suite is physically separate from both the hallway and the other suites. The evidence showed that each suite had its own door and had to be entered separately. Moreover, the evidence also showed that Bedard ransacked each suite he was charged with burglarizing. Based on the evidence, we conclude that the charges are separate because each count requires proof of additional facts that the others do not (*i.e.*, separate entry at a separate time). Hence, we conclude that Bedard was properly charged with several counts of burglary because his entry into the several suites cannot be said to have arisen out of a single wrongful act.

Moreover, we find without merit Bedard's argument that he cannot be charged with burglarizing the three suites occupied by the owners of the Templeton Plaza. The court in *People v. Elsey* noted that

> "the ultimate test of whether a burglarious entry has occurred must focus on the protection that the owners or inhabitants of a structure reasonably expect. The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions. A structure with a locked door or window clearly affords a reasonable protection from invasion."[8]

Here, we conclude that the owners of the Templeton Plaza had a separate expectation of privacy from invasion in each of the suites they used. To conclude that an owner of a building using office space in that building would not have such an expectation would defy common sense. Thus, we conclude that Bedard was properly charged with burglarizing the three suites occupied by the owners of the Templeton Plaza.

Furthermore, we find without merit Bedard's argument that he cannot be charged with burglarizing the vacant suites because a defendant can be charged for burglary of an uninhabited struc-

---

[7]*People v. James,* 561 P.2d 1135, 1147 (Cal. 1977) (footnote omitted).

[8]97 Cal. Rptr. 2d at 277-78 (quoting *People v. Nible,* 247 Cal. Rptr. 396, 399 (Ct. App. 1988)).

ture.[9] Thus, Bedard was properly charged with burglarizing the vacant suites. Hence, we conclude that the burglary charges are not multiplicitous and Bedard's burglary convictions should be affirmed.

Accordingly, we affirm Bedard's convictions and sentence.[10]

---

[9]*See* NRS 205.060(1); *accord Elsey,* 97 Cal. Rptr. 2d at 277.

[10]Bedard also argues that he had standing to raise Fourth Amendment issues regarding the search conducted at 7505 Blue Sage Court, that Ruth Ganjei had neither actual nor apparent authority to consent to the search of the storage unit located at 7505 Blue Sage Court, and that there was insufficient evidence to support his conviction of robbery with the use of a deadly weapon. After careful consideration, we conclude that these arguments lack merit.