Filed 3/14/25  P. v. Pele CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083591 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD296121) |
| PENI PELE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Affirmed in part, reversed in part, remanded with directions.

Christopher Stansell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

Peni Pele appeals from a four-year prison sentence imposed after he pled guilty to threatening a witness.  He contends that the trial court should

have ordered his sentence to be served in county jail under Penal Code section 1170, subdivision (h).[1]  Alternatively, Pele asserts that he should be afforded an opportunity to withdraw his guilty plea because he agreed to it with the understanding that he would serve his sentence in county jail.  We agree with Pele's first argument and therefore need not decide the second.  Accordingly, we reverse Pele's prison commitment and remand the matter to the trial court with directions to order that his sentence be served in county jail rather than state prison.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2023, after being charged in a four-count amended information, Pele pled guilty to one count of threatening a witness (§ 140, subd. (a)) and admitted having served a prior prison term.  In exchange, the prosecution dismissed both the balance of the charges and a separate case against him.  As the factual basis for his plea, Pele admitted that he "willfully used force or threatened to use force on a witness to a crime."

The plea form indicated that the parties had stipulated to an upper term of four years but did not explicitly state whether the sentence would be served in state prison or county jail.  In the standard list of possible consequences on the plea form, several listed items were circled, but not the one for "Mandatory State Prison."

Though not stated on the plea form, both sides understood from their negotiations that Pele would be allowed to serve his sentence in local custody

---

1      Unless otherwise specified, all further statutory references are to the Penal Code.

2

rather than state prison under section 1170, subdivision (h).[2] At the plea hearing, however, when the court orally summarized the terms of the plea bargain, it stated that Pele was "stipulating to a sentence of four years to be served in state prison." Pele confirmed the trial court's summary of the plea bargain and stated that no other promises or representations had been made to him.

Before sentencing, the probation department filed a presentence report indicating that Pele had suffered prior burglary convictions in Nevada. The court continued the sentencing hearing to allow the prosecution to obtain records of the Nevada priors.

After obtaining the Nevada records, the prosecution filed a motion requesting leave to file an amended information to allege two 2016 Nevada burglary convictions as strike priors under sections 667, subdivisions (b)–(i) and 1170.12. The prosecution asserted that these two burglary convictions qualified as serious felony priors because Pele had pled guilty to Category B felonies and "**only** residential burglary is a Class B felony" under Nevada's burglary statute.[3] Under California law, first-degree burglary of an inhabited dwelling is defined as a serious felony. (§ 1192.7, subd. (c)(18).) The prosecution further asserted that even if the court denied its motion, Pele would still have to serve his time in state prison because of the Nevada serious felony priors. The prosecution therefore acknowledged that Pele

[2]    With specified exceptions, section 1170, subdivision (h) provides that a person convicted of certain felonies shall be sentenced to serve the term of imprisonment in county jail. Absent a statutory exception, threatening a witness is one of the qualifying felonies for which the sentence would be served in county jail. (See § 140, subd. (a) [prescribing punishment "by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years"].)

[3]    The People no longer advance this argument on appeal.

should be entitled to withdraw his plea because the parties had entered it with the understanding that he would serve his time in local custody.

Attached to the prosecution's motion were the Nevada records of Pele's 2016 guilty plea in two separate cases. In one case, the amended indictment charged Pele with the crime of burglary committed on or between October 31, 2012 and December 4, 2012 by entering with intent to commit larceny a "certain building occupied by" two named individuals "located at 2208 De Osma" in Las Vegas "and/or that certain building occupied by" two other named individuals "located at 2829 Merritt Avenue" in Las Vegas. In the second case, the amended indictment also charged Pele with the crime of burglary committed on or about November 5, 2012 by entering with intent to commit larceny that "certain building occupied by" a named individual "located at 2200 Glen Heather Way" in Las Vegas "and/or that certain building occupied by" another named individual "located at 4604 Quantana Court" in Las Vegas. In each of these cases, Pele pled guilty to one count of burglary as a Category B felony under Nevada Revised Statutes section 205.060.

In his written opposition to the prosecution's motion, Pele argued that his two 2016 Nevada burglary convictions were not serious felony priors under California law because his guilty plea did not establish that they were burglaries of inhabited dwellings. He asserted that under the holding of *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), the court could only consider facts established by his Nevada guilty plea in determining whether the burglaries were serious felony priors. He also argued that the prosecution had incorrectly relied on the current version of the Nevada burglary statute, rather than the version in effect at the time of his prior

4

offenses in 2012, which included burglary of a commercial building as a Category B felony.

At the sentencing hearing, the court denied the prosecution's request to amend the information to allege strike priors based on the Nevada burglary convictions. The court imposed the stipulated sentence of four years, but ruled that Pele was required to serve his time in state prison rather than county jail based on its finding that his 2016 Nevada burglary priors were burglaries of inhabited residences and therefore serious felony priors. In making this finding, the court relied on the following facts: (1) the Nevada record of conviction listed the victims as individuals, rather than businesses; (2) the prosecutor represented at the hearing that she had viewed "pictures of the property" on Google and they showed "a single-story residence" in a "suburban neighborhood"; (3) the prosecutor reported that her Google search showed "the home was built in 1980"; (4) the court interpreted Pele's guilty plea to burglary of an "occupied" building to mean that someone was "living in there"; and (5) the Nevada records purportedly indicated "a street address and husband and wife's named as the owners of the property" and that was "sufficient enough to make a ruling that it was a residence that was occupied."

At the hearing, defense counsel again argued that Pele's guilty plea to the charges of burglary of an "occupied building" under Nevada law was not equivalent to burglary of an inhabited dwelling. Defense counsel acknowledged that "you can occupy a residence," but pointed out that "you can also occupy other buildings that aren't residences," such as "if you're occupying something as an owner of . . . a business . . . ." Defense counsel also objected to the trial court's reliance on the prosecutor's Google searches on the ground that this information was beyond the scope of the Nevada

5

record of conviction. The trial court overruled this objection as follows: "Well, the address is listed. So if they're referencing the address, that's relevant. Why shouldn't the Court be able to investigate or a party be able to investigate the residence of that location since it's listed? It's listed for a reason -- or that information is in there. So I find it's relevant."

## DISCUSSION

Pele argues there is no substantial evidence to support the trial court's finding that his Nevada burglary convictions were serious felony priors disqualifying him from serving his sentence in county jail under section 1170, subdivision (h). We agree.

## A

With specified exceptions, section 1170, subdivision (h) provides that a person convicted of certain felonies shall be sentenced to serve the term of imprisonment in county jail. The parties do not dispute that without his Nevada burglary convictions, Pele's four-year sentence for threatening a witness would have been served in county jail rather than state prison. As relevant here, however, the statute includes an exception for anyone who has a prior conviction "in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of Section 1192.7 or a violent felony described in subdivision (c) of Section 667.5 . . . ." (§ 1170, subd. (h)(3).) For someone with such a prior conviction, the statute provides that the sentence "shall be served in the state prison." (*Ibid*.) And unlike prior convictions that are used to impose a longer sentence, there is no formal pleading requirement for a prior conviction used to disqualify an otherwise eligible defendant from serving his sentence in county jail under section 1170, subdivision (h). (*People v. Griffis* (2013) 212 Cal.App.4th 956, 962–965.)

6

Under California law, first-degree burglary (i.e., burglary of an inhabited dwelling in violation of section 460, subdivision (a)) is defined as a serious felony under section 1192.7, subdivision (c)(18). Absent other aggravating circumstances, however, second-degree nonresidential burglary is not a serious felony. (§ 460, subd. (b); *People v. Johnson* (2015) 61 Cal.4th 674, 680 [second-degree burglary "is neither serious nor violent"].) The question before us now is whether there is substantial evidence in the record that Pele's 2016 Nevada Category B burglary convictions included all the elements of first-degree residential burglary of an inhabited dwelling as defined by California law.

Although Pele admitted the necessary elements of these Nevada burglaries when he pled guilty, that alone would not be sufficient. When Pele committed these burglaries and was prosecuted for them, the applicable Nevada statute making burglary a Category B felony applied to commercial buildings as well as residential homes, specifically including a "shop, warehouse, store . . . or other building . . . ." (Nev. Rev. Stat. § 205.060(1) [effective through June 30, 2020]; see also *Bedard v. State* (2002) 118 Nev. 410 [48 P.3d 46] [affirming burglary convictions under Nevada Revised Statutes section 205.060 for breaking into office suites and stealing items].)[4] We must therefore look beyond the bare elements of the Nevada burglary statute to determine whether Pele's convictions were for burglary of an inhabited dwelling.

---

[4] The Nevada burglary statute has since been amended to create different subdivisions for residential burglary, burglary of a business, burglary of a motor vehicle, and burglary of a structure. (Nev. Rev. Stat. § 205.060(1)(a)–(d).) Under the current version, burglary of a business is now a category C felony and residential burglary is a category B felony. (Nev. Rev. Stat. § 205.060(2)(c) & (d).)

The parties dispute which line of cases we should follow in making this determination. The People argue that we should follow case law applying the standard set forth in *People v. Guerrero* (1988) 44 Cal.3d 343 (*Guerrero*). Under this standard, "the trier of fact may consider the entire record of the proceedings leading to the imposition of judgment on the prior conviction to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all the elements of the comparable California serious felony offense." (*People v. Myers* (1993) 5 Cal.4th 1193, 1195 [applying *Guerrero* to out-of-state convictions].)

Pele argues that we should instead apply the standard set forth in *Gallardo, supra*, 4 Cal.5th 120, which "invalidated the prior procedure that *Guerrero* and other cases had approved" based on intervening decisions of the United States Supreme Court. (*In re Milton* (2022) 13 Cal.5th 893, 905–906.) Applying Sixth Amendment principles, *Gallardo* concluded that "a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction." (*Gallardo*, at p. 136.) The court explained: "That inquiry invades the jury's province by permitting the court to make disputed findings about 'what a trial showed, or the plea proceeding revealed, about the defendant's underlying conduct.'" (*Ibid*.) "The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Ibid*.)

The People contend that "*Gallardo* is not applicable here because the court's finding [of a serious felony prior] did not serve to increase appellant's

8

sentence." Pele responds that *Gallardo* applies because the court's finding not only affected where he would serve his sentence, but also required him to serve a postrelease community supervision term (similar to parole) that he would not otherwise have had to serve after release from county jail. (See § 3450 et seq.; *People v. Gutierrez* (2016) 245 Cal.App.4th 393, 399.)

We need not resolve this dispute. As we shall explain, we reach the same result under either *Guerrero* or *Gallardo*.

B

We begin by considering whether the trial court properly relied on the prosecutor's representations regarding her Google searches. There can be no serious dispute that this information was not part of the record of the Nevada convictions. The Nevada record includes the addresses of the four buildings Pele was charged with burglarizing, but it does not identify them as residential buildings and does not contain photos of any of the buildings or information about when they were built. The prosecutor's representations that she viewed "pictures of the property" on Google, that the photos showed "a single-story residence" in a "suburban neighborhood," and that "the home was built in 1980" were all beyond the record of the Nevada convictions.[5]

Even under *Guerrero*, it would not be proper for a court to consider this extraneous information. *Guerrero* allows the court to "look to the record of the conviction—*but no further . . . .*" (*Guerrero, supra,* 44 Cal.3d at p. 355.) This limitation "effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the

___

[5]    The prosecutor also did not identify which of the four properties she was referring to at the hearing. Because each of the Nevada amended indictments charged Pele with burglarizing one building "and/or" another building at a different address, and he only pled guilty to one count of burglary in each case, it is not even clear from the record that Pele pled guilty to burglarizing all four of the buildings identified in the two indictments.

9

defendant with harm akin to double jeopardy and denial of speedy trial."
(*Ibid*.)  *Guerrero* therefore prohibits the use of extra-record evidence about
the nature of a defendant's priors.  (See, e.g., *People v. Trujillo* (2006) 40
Cal.4th 165, 180 [*Guerrero* prohibits reliance on defendant's statement in
postconviction probation officer's report]; *People v. Scott* (2000) 85
Cal.App.4th 905, 911–913 [*Guerrero* prohibits reliance on postconviction
prison records]; *People v. Rhoden* (1989) 216 Cal.App.3d 1242, 1257–1258
[*Guerrero* prohibits reliance on postconviction prison intake and classification
report].)  And *Gallardo* explicitly reaffirmed this aspect of *Guerrero*.
(*Gallardo, supra*, 4 Cal.5th at p. 138.)  Thus, the prosecutor's extra-record
Google searches may not be considered in deciding whether Pele's Nevada
burglary convictions were serious felonies.

Next, we consider the trial court's finding that the Nevada records
identified a husband and wife as owners of one of the properties Pele
burglarized.  We see nothing in the record to support this finding.  In their
respondent's brief, the People assert that "one of the addresses within the
information listed what appeared to be a husband and wife as the occupants
because they shared the same last name."  This is simply not accurate.  The
two indictments listed a total of four buildings occupied by six different
named individuals—with six different last names.  There is no indication that
any of these individuals were married or co-owned one of the properties.  And
even if there were, that still would not rule out the possibility that they
occupied the building as co-owners of a business.

This leaves us with the fact that Pele pled guilty to entering certain
"buildings" located at specified addresses in Las Vegas that were "occupied"
by certain named individuals—and he did so with the intent to commit

10

larceny.[6]  Under either *Guerrero* or *Gallardo*, this is still insufficient to establish that the burglaries were of inhabited dwellings.  As we have noted, the Nevada statute making burglary a Category B felony at the time applied to both residential and nonresidential buildings.  (Nev. Rev. Stat. § 205.060(1) [effective through June 30, 2020].)  Moreover, as defense counsel argued below, a commercial building can be "occupied" by an individual such as a business owner.  The trial court itself acknowledged that one standard dictionary definition of the word "occupy" is "to take up (a place or extent in space)."  (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/occupy> [as of March 12, 2025], archived at <https://perma.cc/4ZRB-BDPC>.)  A business owner or even a customer can occupy a commercial building by taking up a place or extent in its space.  (See also *People v. Villalobos* (2006) 145 Cal.App.4th 310, 321 [acknowledging that "a motel room may be 'occupied' for purposes other than use as a temporary dwelling, and thus not be 'inhabited' for purposes of the burglary and robbery statutes" if the room is "rented as a place to transact business, licit or illicit"].)

An unpublished Nevada Supreme Court case decided the same year as Pele's burglaries (and originating from the same county) illustrates this point nicely.  In *Carr v. State* (Nev., July 27, 2012, No. 57553) 2012 WL 3079108, the defendant was charged with burglary for stealing gambling chips worth several thousand dollars from a man named Robert Morton while he was playing roulette at the Luxor casino in Las Vegas.  (*Id.* at p. *1.)  In what

---

6 In their briefing, both parties presume that Pele admitted to burglarizing "occupied" properties as alleged in the indictments, even though this is not a necessary element of burglary under Nevada law and Pele did not specifically admit this allegation in his plea form.  Without deciding the question, we will make the same assumption.

appears to be boilerplate language nearly identical to that used in Pele's indictments, the charging document alleged that the defendant violated Nevada Revised Statutes section 205.060(1) by entering "with intent to commit larceny, that certain building occupied by ROBERT MORTON, located at 3900 South Las Vegas Boulevard" in Las Vegas. (*Id.* at p. *5.) The Nevada Supreme Court rejected the defendant's argument that the information was deficient "because the State did not name the Luxor as the alleged victim." (*Id.* at p. *4.) This demonstrates that a Las Vegas, Nevada charging document from this era alleging that the defendant committed burglary in violation of Nevada Revised Statutes section 205.060 by entering a certain building occupied by a named individual with intent to commit larceny does *not* mean that the burglary was of an inhabited dwelling.

Confining ourselves to the Nevada record of conviction, as we must under either *Guerrero* or *Gallardo*, we conclude no substantial evidence supports a finding that Pele's 2016 Nevada burglary convictions included all the elements of a serious felony as described in section 1192.7, subdivision (c). The trial court therefore erred by ordering Pele to serve his four-year sentence in state prison, rather than in county jail under section 1170, subdivision (h). Because we reverse Pele's prison commitment and direct that he must serve his sentence in county jail, we need not decide his alternative argument that he should be afforded an opportunity to withdraw from the plea agreement.

To ensure prompt relief and avoid delay, we encourage the parties to stipulate to immediate issuance of the remittitur if they do not intend to seek further review. (Cal. Rules of Court, rule 8.272(c)(1).)

12

DISPOSITION

Pele's commitment to state prison is reversed and the matter is remanded to the trial court with directions to order that Pele instead serve his sentence in county jail.  In all other respects, the judgment is affirmed.


BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.